**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GILBERT RAMEZ CHAGOURY<br>21 Bis Avenue D'Iena,<br>Paris, France 75116,<br><br>       Plaintiff,<br><br>   v.<br><br>FEDERAL BUREAU OF INVESTIGATION<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535-0001,<br><br>DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530-0001,<br><br>NATIONAL COUNTER TERRORISM<br>CENTER<br>1500 Tysons McLean Drive<br>McLean, VA 22102,<br><br>DEPARTMENT OF STATE<br>2201 C Street, NW<br>Washington, D.C. 20520,<br><br>CENTRAL INTELLIGENCE AGENCY<br>1000 Colonial Farm Road<br>McLean, VA 22101,<br><br>DEPARTMENT OF HOMELAND SECURITY<br>245 Murray Lane SW<br>Washington, D.C. 20528-0075,<br><br>AND<br><br>UNITED STATES CUSTOMS AND BORDER<br>PROTECTION<br>1300 Pennsylvania Avenue. NW<br>Washington, D.C. 20229,<br><br>       Defendants. | Civil Case No. 16-1844 |

**COMPLAINT**

**Introduction**

1.      Plaintiff Gilbert Ramez Chagoury ("Gilbert Chagoury") is a devout Catholic who has dedicated much of his life to philanthropic works across the globe.  Born in Nigeria to Lebanese parents, he is a British citizen who has worked for peace around the world and has devoted much of his life to the security and religious liberty of the Christians of the Middle East. He has been a lifelong supporter of the United States and of America's interests around the world.  He has a long history of philanthropy on behalf of many United States charities including, but by no means limited to, his substantial financial support of St. Jude Children's Research Hospital.

2.      An Ambassador to the Holy See, Gilbert Chagoury is a man of deep faith who abhors violence and works tirelessly for peace in his native Nigeria, his ancestral home of Lebanon, the Middle East, and the world.

3.      Notwithstanding this exceptional record of public service and demonstrated commitment to core American values such as religious freedom, Gilbert Chagoury was denied a visa by the United States Department of State ("State Department").  Gilbert Chagoury believes that this decision was based on false information.  On information and belief, the State Department, or possibly the Federal Bureau of Investigation ("FBI"), Department of Justice ("DOJ"), National Counter Terrorism Center ("NCTC"), Central Intelligence Agency ("CIA"), Department of Homeland Security ("DHS"), or the United States Customs and Border Protection ("CBP"), compounded this injustice by leaking information about the denial of Gilbert Chagoury's visa application, including the false information that reportedly led to the visa denial, without seeking or obtaining his consent, to Joe Tanfani, a reporter at the Los Angeles Times ("LA Times").

4.     Because Gilbert Chagoury is a successful businessman, influential advocate for religious freedom, philanthropist and a friend of prominent political leaders, the LA Times published the story in its newspaper under an inflammatory headline.

5.     The intentional leak to the media of false information improperly impugning the reputation of Gilbert Chagoury repeats a similarly unlawful incident from 2010, when Gilbert Chagoury was wrongly placed on the no-fly list, without notice or opportunity to be heard, and his placement on the no-fly list was leaked to the media.  When challenged with facts, the U.S. Government reversed that decision and allowed Gilbert Chagoury to travel to the United States, which he did multiple times without incident until quite recently.

6.     The Government's deliberate, outrageous and unlawful leak of information and more importantly, misinformation about Gilbert Chagoury violated the Privacy Act and the Judicial Redress Act.

7.     The Government's intentional leak of misinformation about Gilbert Chagoury triggered the obviously foreseeable and inevitable consequence of banks refusing to conduct business with him or those acting on his behalf, depriving him of property interests in violation of his Constitutional right to due process.

8.     As a result of the Government's malfeasance, Gilbert Chagoury's reputation, business opportunities, and property interests have been harmed.  He therefore brings this action to recover damages caused by the Government's illegal disclosure of misinformation to the media, to enjoin the Government from continuing to disseminate to the public information and misinformation concerning him, and to obtain the process he is due for the deprivation of his property rights.

## Parties

9.      Plaintiff, Gilbert Ramez Chagoury ("Gilbert Chagoury"), was born in Nigeria and is a British citizen.

10.     The Federal Bureau of Investigation ("FBI") is a component of the United States Department of Justice, a Department of the Executive Branch of the United States Government.

11.     The Department of Justice ("DOJ") is a Department of the Executive Branch of the United States Government and oversees the FBI.

12.     The National Counter Terrorism Center ("NCTC") is an agency of the Executive Branch of the United States Government.

13.     The Department of State ("State Department") is a Department of the Executive Branch of the United States Government and is responsible for the review of applications for visas to enter the United States.

14.     The Central Intelligence Agency ("CIA") is an agency of the Executive Branch of the United States Government.

15.     The Department of Homeland Security ("DHS") is a Department of the Executive Branch of the United States Government.

16.     The United States Customs and Border Protection ("CBP") is a component of DHS, a Department of the Executive Branch of the United States Government.

## Jurisdiction

17.     This action arises under the Judicial Redress Act, Pub. L. 114-126 §2(a), the Privacy Act, 5 U.S.C. §552(a) et seq., and the Fifth Amendment to the United States Constitution.

18.     This court has exclusive jurisdiction over claims arising under the Judicial Redress Act.  Pub. L. 114-126 § 2(g).

19.     Venue is proper in this district pursuant to Pub. L. 114-126 § 2(g).

20.     This court has subject-matter jurisdiction over the claim arising under the Fifth Amendment pursuant to 28 U.S.C. §§ 1331 and the power to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 & 2202.  Venue is proper pursuant to 28 U.S.C. § 1391.

**Facts**

21.     Gilbert Chagoury is a prominent businessman and a leading figure in the Maronite Catholic community.  He was born in Nigeria to Lebanese-Christian parents, is a British citizen, and currently resides in Paris.

22.     Gilbert Chagoury is Founder and Chairman of the Chagoury Group, an industrial conglomerate with assets exceeding $1 billion that employs thousands of people worldwide.  He is also Saint Lucia's Ambassador to UNESCO, to the United Nations Office at Geneva, and to the Holy See.

23.     Gilbert Chagoury is a private individual, who is best known for his business activities, advocacy for religious freedom and his philanthropy.

24.     Gilbert Chagoury is engaged in philanthropic activities across the globe, including in the United States.

25.     Gilbert Chagoury has funded the establishment of a medical school and a nursing school at the Lebanese American University.

26.     Gilbert Chagoury has been named Commander of Arts and Letters by the French Ministry of Culture for his contributions to the restoration of the Richelieu Aisle in the Musée du

Louvre.  He has also donated a series of six seventeenth-century, Beauvais tapestries and a pair of Sèvres vases to the Louvre, for which he has a gallery in his name.

27.     Gilbert Chagoury is an active supporter of health, education, and infrastructure projects elsewhere, and particularly in Mizyara, Lebanon.

28.     Gilbert Chagoury has donated millions of dollars to the Clinton Global Initiative.

29.     Gilbert Chagoury has funded scholarships and degree programs at multiple universities in the United States and has donated to the St. Jude Children's Research Hospital.

30.     As a result of these philanthropic activities, Gilbert Chagoury travels around the world, including to and within the United States.

31.     These activities are only part of the positive and mutually beneficial interactions that Gilbert Chagoury has long had with the United States.  As an important industrialist in Nigeria, he has assisted the U.S. Embassy there whenever possible, and U.S. Ambassadors often call him to help solve their problems.

32.     Gilbert Chagoury has previously held a U.S. visa and he has traveled to this country regularly.

33.     Gilbert Chagoury owns and maintains a home in Beverly Hills and owns additional property in California.  He is a dedicated fan of the Los Angeles Lakers.

34.     Gilbert Chagoury frequently visits family members who are United States citizens and live in the United States.

35.     In addition, in the course of his career, Gilbert Chagoury has developed friendships with many prominent Americans.  This group includes Government officials protected by the Department of Homeland Security's Secret Service, the Department of State's Bureau of Diplomatic Security, and similar agencies.  Gilbert Chagoury has been cleared by

these security forces to attend events and socialize with many current and former officials, including President William J. Clinton.

## January 2010 No-Fly List Incident

36.     In January 2010, Gilbert Chagoury was wrongly placed on the no-fly list.

37.     Gilbert Chagoury was provided no notice or opportunity to be heard prior to being placed on the no-fly list.

38.     Almost immediately, on February 17, 2010, ABC News reported that Gilbert Chagoury had been placed on the no-fly list.

39.     The article, which was published on the World Wide Web, cited "law enforcement authorities" as the source of this information and reported that "law enforcement authorities say Chagoury was a 'positive match' to the Gilbert Chagoury on the terrorism no fly list."

40.     According to the ABC News article, "the no-fly list is designed to 'keep known terrorists off planes.'"

41.     Upon information and belief, the "law enforcement authorities" who were the source of the ABC News article were agents of the FBI.

42.     The ABC News report instigated a spate of additional stories branding Gilbert Chagoury as a terrorist.

43.     The injuries to Gilbert Chagoury's reputation caused by the leak were exacerbated by the falsity of the misinformation leaked and the Government's refusal to disavow it.

44.     Gilbert Chagoury sought redress by filing a petition with DHS under its only available procedure, the Traveler Redress Inquiry Program and by preparing a lawsuit to rebut the wrongful allegations against him.

45.     As a result, the Government removed him from the no-fly list and issued a letter of apology.

46.     Gilbert Chagoury has traveled to the United States multiple times without incident since being taken off the no-fly list.

## 2015 Visa Application

47.     Gilbert Chagoury has travelled regularly to the United States for over 35 years on ten year multiple-entry tourist visas.  The last visa was issued in December 2006.

48.     On May 22, 2015, the State Department revoked Gilbert Chagoury's visa and required him to reapply, which he did.

49.     The State Department then denied Gilbert Chagoury's application for a visa in September 2015, citing the Immigration and Nationality Act ("INA") Section 212(a)(3)(b).

50.     Being denied a visa pursuant to INA Section 212(a)(3)(b) indicates that the State Department wrongly believed Gilbert Chagoury has provided material assistance to terrorism.

51.     In fact, Gilbert Chagoury has not provided material assistance to any terrorist group and there is no reasonable basis on which to believe he is a terrorist threat.

52.     On information and belief, the State Department believed Gilbert Chagoury provided material support to terrorists because of misinformation provided to it by the FBI, DOJ, NCTC, CIA, DHS, or CBP.

## Disclosure to LA Times

53.     Beginning in June 2016 and continuing to the present day, Gilbert Chagoury and his spokesperson have received and continue to receive communications from Joe Tanfani, a reporter at the LA Times, asking for details regarding the denial of Gilbert Chagoury's visa application.

54.     On August 28, 2016, the Los Angeles Times published an article entitled "He was a billionaire who donated to the Clinton Foundation.  Last year, he was denied entry into the U.S.," by Joe Tanfani, reporting that Gilbert Chagoury applied for and was denied a visa. (Exhibit A, attached hereto).

55.     According to the LA Times article, the source of Tanfani's information was FBI intelligence reports, interagency memos, government documents and "other allegations from intelligence and law enforcement sources," none of which would have been available to Tanfani but for an unlawful leak on the part of the defendant agencies.

56.     The LA Times article states that interagency memos show "[t]he U.S. put Chagoury in its database used to screen travelers for possible links to terrorism" based on allegations he was "facilitating fundraising for Hezbollah," further evidencing Joe Tanfani was provided misinformation concerning Gilbert Chagoury that is stored in government databases.

57.     Upon information and belief, the unlawfully disclosed information referenced in the LA Times article was disclosed by agents of the FBI, DOJ, NCTC, State Department, CIA, DHS, and/or CBP.

58.     In preparing for his article, Tanfani, asked for comment on his statement that "Mr. Chagoury and members of his family last year were denied visas to enter the U.S. because of reports in government databases alleging that he may have provided support to terrorism – so called 3B grounds under the Immigration and Naturalization Act, according to sources. Specifically, there have been unconfirmed reports to US agencies that he may have provided support to Hezbollah, in cooperation with Gen. Michel Aoun."

59.     Tanfani's questions show knowledge of information – albeit false information – stored in "government databases" that he could only access by means of an unlawful government leak.

60.     President Obama has declared a "zero tolerance" policy against government leakers.[1]

61.     For that reason, Gilbert Chagoury is in the process of requesting that the Inspector Generals of DOJ, State Department, CIA, and DHS, as well as the Inspector General of the Intelligence Community, investigate the possibility the leak came from within their Departments.

62.     Gilbert Chagoury is similarly in the process of requesting that the Privacy Officers of the DOJ, State Department, CIA, DHS, CBP, and Office of the Director of National Intelligence ("ODNI") investigate the possibility that a leak of personal information came from their Department or agency, and that those Privacy Officers provide access to the false records linking Gilbert Chagoury to Hezbollah and amend those records to reflect the truth – Gilbert Chagoury does not support any terrorist organization.

63.     At no point in time did Gilbert Chagoury consent to any Government agency or Department disclosing information that his visa application was denied or any other information or misinformation about him.

64.     At no point in time was Gilbert Chagoury afforded notice or an opportunity to be heard prior to the Government's disclosure of information and misinformation relating to him.

65.     The LA Times report has instigated a spate of additional stories repeating and further disseminating information about the denial of Gilbert Chagoury's visa and

---

[1] US Department of Justice, *Attorney General Guidelines for Victim and Witness Assistance* (2011 ed., revised May 2012), *available at* http://www.justice.gov/olp/pdf/ag_guidelines2012.pdf.

misinformation that he has provided material support to a terrorist organization, namely
Hezbollah.

66.     Gilbert Chagoury has never provided any financial or any other support to
Hezbollah or any other terrorist organization.  He has supported organizations providing food
and shelter to Christians turned into refugees by the civil war in Syria, but by no stretch of the
imagination may he be considered the source of assistance to terrorist organizations.

67.     The Government's failure to publicly deny the accusations in the articles lends
them the Government's tacit approval and support.

68.     Gilbert Chagoury has suffered adverse effects as a result of the leak to the LA
Times and the Government's failure to publicly rebut the accusations made, including but not
limited to stigma and humiliation.

69.     The Government's tacit approval and support of these wrongful accusations leads
the public to believe them, exacerbating the damage to Gilbert Chagoury.  This is not simply a
matter of harm to Gilbert Chagoury's reputation or of lost business opportunities.  Hezbollah has
enemies.  Hezbollah today is locked in a deadly Syrian conflict with Islamic State (also known as
ISIS or ISIL).  Islamic State has not limited its actions to Syria and Iraq.  It has killed dozens in
terrorist attacks aimed at its enemies in Paris and other Western European nations. To be falsely
cast as a supporter of Hezbollah is to have one's life and the lives of one's family put at risk.

**Bank Reaction to the LA Times Article**

70.     The United States Government strictly regulates banks.

71.     Among the many banking regulations, the United States Government demands
banks vigilantly guard against allowing suspected financiers of terrorism from opening or
maintaining accounts or transferring money into or out of their banks.

72.     The Office of Foreign Assets Control ("OFAC") maintains a list of Specially Designated Nationals ("SDNs") with whom U.S. persons and entities are prohibited from transacting business, subject to penalties.

73.     Beyond the SDN list, "Know-Your-Customer" or "Customer Identification Program" rules promulgated by the United States Government cause banks vigilantly to avoid doing business with any person or entity whose reputation has been put in doubt, regardless of the truth of the matter.

74.     These rules particularly warn banks that they must "include procedures for determining whether the customer appears on any list of known or suspected terrorists or terrorist organizations issued by any Federal government agency and designated as such by Treasury in consultation with the Federal functional regulators."  31 C.F.R. § 1020.220(a)(4).  The rules do not caution banks to avoid relying on unauthorized or unlawful leaks by government officials.

75.     In addition, the criminal money laundering statutes create potential criminal liability for banks and bank officers if there is knowledge or willful blindness that a customer is using the bank to move illegally derived funds or funds intended to finance illegal activities.  18 U.S.C. §§ 1956, 1957.

76.     Banks are predictably risk-averse; allegations in a news article of unconfirmed claims that an individual financially supports terrorism, coupled with United States banking regulations including, but not limited to, those listed above, will lead banks to refuse to transact business with that individual, regardless of the veracity or source of that information.

77.     By leaking misinformation regarding Gilbert Chagoury, the leaking government agency triggered what amount to financial sanctions on Gilbert Chagoury by inducing banks to stop serving him and his businesses.

78.     An attorney of Gilbert Chagoury's has maintained client accounts in California on his behalf for many years.  Almost immediately after the LA Times article was published, the bank notified Gilbert Chagoury's attorney to say the bank was closing the accounts.  Upon information and belief, the misinformation the Government unlawfully leaked triggered the bank's decision to close the accounts.

79.     Limitations on his ability to transfer money to his bank in the United States, means that Gilbert Chagoury is finding it increasingly difficult to pay for maintenance, property taxes, and other continuing expenses on his house in Beverly Hills and additional property he owns in California.  The result is that the value of this property has been significantly diminished and potentially, extinguished.

80.     These harmful consequences were the direct and entirely predictable consequence of the leak to the media and subsequent news story.  Thus, the United States Government, by means of the intentional and willful leak of misinformation regarding Gilbert Chagoury, deprived him of his property rights and did so without providing due process.

**Count I**

**(UNLAWFUL DISCLOSURE)**

**(AGAINST ALL DEFENDANTS)**

81.     Plaintiff incorporates the allegations contained in paragraphs 1-xx as if fully set forth herein.

82.     Gilbert Chagoury was provided a written notice explaining the denial of his visa, citing INA Section 212(a)(3)(b) as the basis for the denial, indicating the Government's belief that Gilbert Chagoury is a terrorist threat.

83.     In fact, Gilbert Chagoury is not a terrorist threat and there is no reasonable basis on which to believe he is a terrorist threat.

84.     Upon information and belief, the State Department could only wrongfully conclude Gilbert Chagoury is a terrorist threat by relying on false information stored in a Government database.

85.     The LA Times article states that interagency memos show "[t]he U.S. put Chagoury in its database used to screen travelers for possible links to terrorism" based on allegations he was "facilitating fundraising for Hezbollah," further evidencing the presence of misinformation concerning Gilbert Chagoury in government databases.

86.     Upon information and belief, the false information regarding Gilbert Chagoury's alleged material support for terrorism, and the information of his denied visa application, are maintained within one or more Privacy Act system of records and are retrievable by use of his name or some identifying number, symbol or other identifying particular assigned to him.

87.     Pursuant to 5 U.S.C. § 552a(b), the FBI, DOJ, NCTC, State Department, CIA, DHS, and CBP may not "disclose any record which is contained in a system of records by any means of communication to any person, or to another agency" unless certain exceptions apply.

88.     At no point in time did Gilbert Chagoury provide the Government with either verbal or written consent to disclose any information or misinformation concerning him to third parties.

89.     Upon information and belief, FBI, DOJ, NCTC, State Department, CIA, DHS, or CBP, through its agents, disseminated information protected by the Judicial Redress and Privacy Acts concerning Gilbert Chagoury to Joe Tanfani, an LA Times reporter.  This information included the denial of his visa application and the misinformation that he provided material

support for terrorists.  No lawful exception authorized this disclosure.

90.     The unauthorized disclosure to the media violated 5 U.S.C. § 552a(b) and directly and proximately caused adverse effects for Gilbert Chagoury, giving rise to a claim pursuant to the Judicial Redress Act. Pub. L. 114-126 § 2(a)(1).

91.     Upon information and belief, the Defendants knew or should have known their actions were improper, unlawful and would cause Gilbert Chagoury substantial harm.  Indeed, the LA Times article does not refer directly to the source of the confidential government documents on which they relied, presumably because the source spoke to the media only on condition of anonymity given the illegality of leaking protected information.

92.     Upon information and belief, the Defendants and their employees and officers acted intentionally and willfully in violation of Gilbert Chagoury's privacy rights.

93.     Further evidencing the willful and intentional nature of the Defendants violation, this is part of a pattern of wrongful and unlawfully leaked misinformation injuring Gilbert Chagoury.

94.     As a direct and proximate result of Defendants' violations of the Judicial Redress and Privacy Acts, Gilbert Chagoury has suffered grave injury, including but not limited to emotional trauma, loss of reputation, lost and jeopardized business opportunities, and public relations and attorneys' fees.

95.     As a proximate and predictable result of Defendants' violations of the Judicial Redress and Privacy Acts, banks have refused to conduct business with Gilbert Chagoury and he has thus been unable to pay the expenses associated with his properties and businesses in California, causing him significant financial injury.

96.     The falsity of the leaked information exacerbates the damages Gilbert Chagoury has suffered and continues to suffer.

97.     The Government's failure to disavow the misinformation creates an ongoing harm to Gilbert Chagoury because it leads observers to believe that the United States Government's information is accurate and that the Government's silence is tacit confirmation of the false information.

98.     Gilbert Chagoury continues to be damaged on an ongoing basis so long as the false information continues to be propagated without him being afforded an opportunity to rebut it or the Government disavowing it.

**Count II**

**(PROCEDURAL DUE PROCESS)**

**(AS AGAINST ALL DEFENDANTS)**

99.     Plaintiff incorporates the allegations contained in paragraphs 1-xx as if fully set forth herein.

100.     The Fifth Amendment to the United States Constitution states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.

101.     The Fifth Amendment's Due Process Clause protects Gilbert Chagoury's liberty and property interests from deprivation by the United States without due process of law.

102.     Gilbert Chagoury is not a terrorist threat and there is no reasonable basis on which to conclude he is a terrorist threat.

103.    The disclosure and publication of Gilbert Chagoury's denied visa and the misinformation that he provides material support to terrorism has injured his good name, reputation, honor, and integrity.

104.    Being denied a visa on INA Section 212(a)(3)(b) grounds is stigmatizing and generates a cloud of suspicion that is not consistent with the decent and honorable person who Gilbert Chagoury is.

105.    The disclosure and publication of Gilbert Chagoury's denied visa, coupled with the United States Government's strict regulation of banks, substantially influenced the banks' decisions to terminate their relationships with him and persons acting on his behalf.

106.    Gilbert Chagoury has a property interest in the multiple properties he owns in California, including his house in Beverly Hills, and his business interests in California.  These property interests have been impaired by the government-induced restraint on his ability to pay the expenses associated with his property and business interests in the United States.  This was the direct, foreseeable and inevitable result of the government's unlawful leak of information and misinformation concerning him to the media.

107.    The leak of information concerning Gilbert Chagoury, coupled with the government-induced reliance by banks on rumor and press clippings to refuse banking services to the victims of leaks, has deprived him of access to his property and businesses in California.

108.    The leak of information concerning Gilbert Chagoury, coupled with government-induced reaction from banks to the misinformation leaked, has deprived him of a property interest protected by the Due Process Clause of the Fifth Amendment.

109.    The Government's unlawful leak of information and misinformation regarding Gilbert Chagoury has caused banks to refuse to conduct business with him and has interfered

with his ability to pursue the occupation of his choice or to use, access or enjoy his property in the United States, depriving him of property interests protected by the Due Process Clause of the Fifth Amendment.

110.    Upon information and belief, the agent who leaked information and misinformation concerning Gilbert Chagoury did so to intentionally harm him, or at least with reckless and deliberate indifference to whether it would cause him harm.

111.    The Due Process Clause of the Fifth Amendment requires that Gilbert Chagoury be given notice and an opportunity to be heard prior to the Government depriving him of the use of his property in the United States.

112.    Gilbert Chagoury received neither notice nor opportunity to be heard prior to the Government, via its unlawful leak and by encouraging or requiring U.S. banks to rely on such leaks in deciding whom to do business with, denying him access to his property and businesses in the United States.

113.    Now that the misinformation has been leaked, nothing short of correcting the misinformation in the public sphere will cure the violation by giving banks the comfort they need to freely transact business with Gilbert Chagoury, allowing him to fulfill his tax and other obligations regarding his property and business interests in the United States.

114.    The Due Process Clause of the Fifth Amendment requires that Gilbert Chagoury be given notice and an opportunity to be heard before the Government, by a public leak of misinformation concerning him, triggers what amount to financial sanctions on him.

115.    As the leak was made by a currently unknown agent within one of the defendant agencies and was not formal agency action, Gilbert Chagoury has no forum in which to seek redress or an opportunity to be heard other than this court.

116.     As the leak was made by a currently unknown agent within one of the defendant agencies and was not formal agency action, Gilbert Chagoury has had no opportunity to challenge the misinformation concerning him contained in government databases and no opportunity to submit evidence that he is not a terrorist threat.

117.     As the leak was made by a currently unknown agent within one of the defendant agencies and was not formal agency action, Gilbert Chagoury was not provided with any information as to the decision reached to constructively place financial sanctions on him, nor the evidence relied on and reasons for that decision.

118.     Thus, Gilbert Chagoury has received neither adequate notice nor opportunity to be heard subsequent to the leak, the banks' resulting refusal to transact business with him, or the deprivation of his property rights in California.

119.     Depriving Gilbert Chagoury of access to any procedure to clear his name – a necessary step in vindicating his property rights – violates the Due Process Clause of the Fifth Amendment.

120.     Allowing the Government to constructively place financial sanctions on Gilbert Chagoury by leaking information and misinformation concerning him violates the Due Process Clause of the Fifth Amendment.

121.     Gilbert Chagoury is suffering and will continue to suffer irreparable injury as a result of the practices described in this Complaint unless those practices are enjoined by this Court.

122.     Gilbert Chagoury has no plain, adequate, or speedy remedy at law and is entitled to declaratory and injunctive relief against defendants.

123.    As a result, Gilbert Chagoury is entitled to an Order declaring that he has not been placed on the SDN list, or any other suspected terrorists list, and requiring Defendants to affirmatively state to the banks and the public that he is not on any such list and he should be permitted to engage in financial transactions that might otherwise be limited by or prohibited by such a designation.

124.    Plaintiff is entitled to an injunction to undo the harm the Government caused. Specifically, this court should issue an order requiring the Defendants to make an affirmative statement to banks and the public that Gilbert Chagoury is not on any terrorist list maintained by the Government and that banks will not experience any adverse regulatory or other consequences from the Government if they engage in financial transaction with Gilbert Chagoury.

125.    Further, Defendants should be enjoined from unauthorized disclosure or distribution of information or misinformation concerning Gilbert Chagoury.

126.    Plaintiff is also entitled to a meaningful hearing in which he is informed of the basis for the Government's incorrect conclusion that he provided support for terrorism and an opportunity to challenge the Government's evidence and conclusion.

127.    Plaintiff is entitled to a hearing at which he may present evidence to clear his good name.

### Relief Requested

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

128.    Award damages equal to actual damages sustained by Gilbert Chagoury as a result of the agency's action pursuant to 5 U.S.C. §552a(g)(4)(A), as extended to Plaintiff by the Judicial Redress Act, required by statute to be no less than $1,000;

129.    Award punitive and exemplary damages as the Court may deem just and proper to deter such future egregious conduct;

130.    Grant preliminary and permanent injunctions prohibiting the Defendants from any further unauthorized disclosure of information or misinformation regarding Plaintiff, including, but not limited to, members of the press or other nongovernment individuals or entities;

131.    Declare that Plaintiff does not appear on any list of known or suspected terrorists or terrorist organizations issued by any Federal government agency, including but not limited to the Specially Designated Nationals ("SDN") list;

132.    Order the United States Government to undo the harm it has caused by affirmatively stating to the banks and the public that Plaintiff is not on the SDN list or any other list of known or suspected terrorists issued by any Federal government agency, that he should be permitted to engage in financial transactions that might otherwise be limited by or prohibited by such a designation, and that banks will not experience any adverse consequences from the Government as a result of engaging in financial transactions with Gilbert Chagoury.

133.    Order the United States Government to provide Plaintiff an opportunity to present evidence and rebut the incorrect information the Government relied on in wrongly determining Plaintiff provided material support to terrorism;

134.    Award Gilbert Chagoury his costs and reasonable attorneys' fees incurred in this action as provided by 5 U.S.C. 552a(g)(4)(B), as extended to Plaintiff by the Judicial Redress Act; and

135.    Grant such other relief as the Court mat deem just and proper.

Dated:  September 15, 2016

Respectfully submitted,
STEPTOE & JOHNSON LLP

 /s/ Stewart Baker_____
Stewart A. Baker (DC Bar No. 262071)
Jennifer Quinn-Barabanov (DC Bar No. 452644)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-3000
sbaker@steptoe.com
jquinnba@steptoe.com

Attorneys for Plaintiff GILBERT R. CHAGOURY