**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GILBERT RAMEZ CHAGOURY, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Civil Action No. 16-1844 (TSC) |
| FEDERAL BUREAU OF, INVESTIGATION, *et al.*, | ) | |
| *Defendants*. | ) | |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

STATEMENT ..... 1

1. Factual Background ..... 3

2. Legal Standard ..... 5

ARGUMENT ..... 6

I. PLAINTIFF LACKS ARTICLE III STANDING TO BRING HIS CLAIM ..... 6

A. Plaintiff Fails To Establish Non-Speculative Injury That Is Likely To Recur In The Future ..... 7

B. Plaintiff's Alleged Injuries Are Not Fairly Traceable To Defendants. ..... 11

C. Plaintiff Cannot Establish That His Alleged Injuries Will Be Redressed Through This Lawsuit. ..... 13

II. PLAINTIFF FAILS TO STATE A CLAIM FOR A DUE PROCESS VIOLATION. ..... 16

A. Plaintiff Was Not Deprived Of A Constitutionally Protected Interest. ..... 18

B. Any Constitutional Deprivation Was Not At The Hands Of The Government. ..... 25

C. Plaintiff In Any Event Has Received All The Process He Is Due. ..... 30

1. Plaintiff was not entitled to pre-deprivation process and its absence fails to establish a due process violation. ..... 32

2. Post-deprivation remedies satisfy the meaningful-opportunity requirement and preclude plaintiff's constitutional claim. ..... 33

3. Plaintiff is not entitled to a name-clearing hearing or any of his other requested remedies and, thus, fails to establish a critical element of his due process claim. ..... 38

*a. Plaintiff is not entitled to a name-clearing hearing.* ..... 38

*b. Plaintiff is not entitled to his other requested remedies.* ..... 42

CONCLUSION ..... 44

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*,
686 F.3d 965 (9th Cir. 2012) .......... 13, 42

*Allen v. Wright*,
468 U.S. 737 (1984) .......... 6

*Am. Civil Liberties Union v. Dep't of State*,
878 F. Supp. 2d 215 (D.D.C. 2012) .......... 26

*Am. Freedom Law Ctr. v. Obama*,
821 F.3d 44 (D.C. Cir. 2016) .......... 13

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) .......... 17, 25, 27

*Armstrong v. Manzo*,
380 U.S. 545 (1965) .......... 31

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) .......... 5, 11, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Blazy v. Tenet*,
979 F. Supp. 10 (D.D.C. 1997) .......... 36

*Blum v. Yaretsky*,
457 U.S. 991 (1982) .......... 26

*Boddie v. Connecticut*,
401 U.S. 371 (1971) .......... 31

*Boston v. Webb*,
783 F.2d 1163 (4th Cir. 1986) .......... 39

*Brooks v. U.S. Dep't of Justice*,
959 F. Supp. 2d 1 (D.D.C. 2013) .......... 36, 37

*Buntin v. City of Boston*,
813 F.3d 401 (1st Cir. 2015) .......... 39

*Chamber of Commerce v. EPA*,
642 F.3d 192 (D.C. Cir. 2011) .......... 8

*Chaplaincy of Full Gospel Churches v. U.S. Navy* (*In re Navy Chaplaincy*),
697 F.3d 1171 (D.C. Cir. 2012) .......... 8, 10

*Chilingirian v. Boris*,
882 F.2d 200 (6th Cir. 1989) ........................................................................................ 39

*Chung v. U.S. Dep't of Justice*,*
333 F.3d 273 (D.C. Cir. 2003) ...................................................................................... 35-37

*Chung v. U.S. Dep't of Justice*,*
No. 00-1912 (TFH), 2001 WL 34360430 (D.D.C. Sept. 20, 2001), *aff'd in relevant part*,
*Chung II*, 333 F.3d 273 (D.C. Cir. 2003) ..................................................................... 35-38

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ..................................................................................................... 7- 9, 11

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011) ........................................................................................... 42

*Clapper v. Amnesty Int'l USA*,*
133 S. Ct. 1138 (2013) ........................................................................................ 8, 11, 13, 15

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ........................................................................................................ 31

*Convertino v. U.S. Dep't of Justice*,
684 F.3d 93 (D.C. Cir. 2012) ........................................................................................... 34

*Dearth v. Holder*,
641 F.3d 499 (D.C. Cir. 2011) ............................................................................................7

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989) .........................................................................................................17

*Dep't of Energy v. Rogers*,*
139 F. Supp. 3d 120 (D.D.C. 2015) ........................................................................... *passim*

*Doe v. Chao*,
540 U.S. 614 (2004) ........................................................................................................ 34

*Doe v. U.S. Dep't of Justice*,
753 F.2d 1092 (D.C. Cir. 1985) ................................................................................... 19-21

*Edwards v. Okie Dokie, Inc.*,
473 F. Supp. 2d 31 (D.D.C. 2007) ............................................................................... 35-36

*Elbert v. Bd. of Educ.*,
630 F.2d 509 (7th Cir. 1980) ............................................................................................ 24

*Endicott v. Huddleston*,
644 F.2d 1208 (7th Cir. 1980) .......................................................................................... 39

*Ex parte McCardle*,
74 U.S. (7 Wall.) 506 (1869) ............................................................................................ 17

*F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*,
244 F.3d 1128 (9th Cir. 2001) .......................................................................................... 31

*Fla. Audubon Soc'y v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) (en banc) .................................................................... 13

*FAA v. Cooper*,
132 S. Ct. 1441 (2012) .................................................................................................. 34

*Fitzgibbon v. CIA*,
911 F.2d 755 (D.C.Cir.1990) ......................................................................................... 26

*Food &Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) ..................................................................................... 6-7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) ...................................................................................................... 16

*Gallucci v. Chao*,
374 F. Supp. 2d 121 (D.D.C. 2005), *aff'd,* No. 05-5280, 2006 WL 3018055 (D.C. Cir. Mar. 2, 2006) ............................................................................................................................ 35

*General Electric v. Jackson,**
610 F.3d 110 (D.C. Cir. 2010) .................................................................................. 22-24

*Gilbert v. Homar*,
520 U.S. 924 (1997) ................................................................................................. 30-31

*Gilday v. Dubois*,
124 F.3d 277 (1st Cir. 1997) ......................................................................................... 42

*Gonzalez v. Freeman*,
334 F.2d 570 (D.C. Cir. 1964) ..................................................................................... 31

*Grand Lodge of the Fraternal Order of Police v. Ashcroft*,
185 F. Supp. 2d 9 (D.D.C. 2001) ..................................................................................... 5

*Greenya v. George Wash. Univ.*,
512 F.2d 556 (D.C. Cir. 1975) ..................................................................................... 17

*Griffin v. Ashcroft*,
No. 02-5399, 2003 WL 22097940 (D.C. Cir. Sept. 3, 2003) ...................................... 36-37

*Gunasekera v. Irwin*,
678 F. Supp. 2d 653 (S.D. Ohio 2010) .......................................................................... 39

*Hatfill v. Mukasey*,
539 F. Supp. 2d 96 (D.D.C. 2008) ................................................................................ 35

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) .......................................................................................................... 40

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) ..................................................................................... 40

*Hudson v. Palmer,**
468 U.S. 517 (1984) ........................................................................................... 32-33, 37

*Hutchinson v. CIA*,
393 F.3d 226 (D.C. Cir. 2005) .......... 19

*Indus. Safety Equip. Asso. v. Envtl. Prot. Agency*,*
837 F.2d 1115 (D.C. Cir. 1988) .......... 22-24

*Jefferson v. Harris*,*
170 F. Supp. 3d 194 (D.D.C. 2016) .......... 19-21

*Jeter v. Fed. Bureau of Prisons*,
841 F. Supp. 2d 214 (D.D.C. 2012), *aff'd*, No. 12-5285, 2013 WL 1733552 (D.C. Cir. Mar. 22, 2013) .......... 36

*Johnson v. United States*,
628 F.2d 187 (D.C. Cir. 1980) .......... 38

*Kartseva v. Dep't of State*,
37 F.3d 1524 (D.C. Cir. 1994) .......... 20-22

*Kerry v. Din*,
135 S. Ct. 2128 (2015) .......... 41-42

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) .......... 41-42

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 5

*Lee v. U.S. Dep't of Justice*,
413 F.3d 53 (D.C. Cir. 2005) .......... 35

*Lightfoot v. Dist. of Columbia*,
273 F.R.D. 314 (D.D.C. 2011) .......... 17

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) .......... 33

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 6-7, 13-14

*Margoles v. Tormey*,
643 F.2d 1292 (7th Cir. 1981) .......... 24

*Marin v. U.S. Dep't of Def.*, No. CIV.A. 95-2175(PLF), 1997 WL 749404 (D.D.C. Nov. 25, 1997), *aff'd*, No. 99-5102, 1999 WL 1006404 (D.C. Cir. Oct. 8, 1999) .......... 21

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 31-32, 37-38

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010) .......... 34

*Mosrie v. Barry*,
718 F.2d 1151 (D.C. Cir. 1983) .......... 21, 29

*Munsell v. Dep't of Agric.*,
509 F.3d 572 (D.C. Cir. 2007) ........................................ 9-10

*Nat'l Council of Resistance of Iran v. Dep't of State*,
251 F.3d 192 (D.C. Cir. 2001) ........................................ 41

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
366 F.3d 930 (D.C. Cir. 2004), *abrogation on other grounds recognized by Perry Capital LLC v. Mnuchin*, 848 F.3d 1072, 1101 (D.C. Cir. 2017) ........................................ 11, 13, 14-15

*NB ex rel. Peacock v. Dist. of Columbia*,
682 F.3d 77 (D.C. Cir. 2012) ........................................ 9, 13

*O'Donnell v. Barry*,*
148 F.3d 1126 (D.C. Cir. 1998) ........................................ 19, 20-22

*Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*,
631 F.2d 953 (D.C. Cir. 1980) ........................................ 21

*Paige v. Drug Enforcement. Admin.*,
665 F.3d 1355 (D.C. Cir. 2012) ........................................ 34

*Paul v. Davis*,*
424 U.S. 693 (1976) ........................................ *passim*

*Payne v. Dist. of Columbia*,
4 F. Supp. 3d 80 (D.D.C. 2013) ........................................ 21

*Peter B. v. CIA*,
174 F. Supp. 3d 308 (D.D.C. 2016) ........................................ 21

*Pinnacle Armor, Inc. v. United States*,
648 F.3d 708 (9th Cir. 2011) ........................................ 31

*Propert v. Dist. of Columbia*,
948 F.2d 1327 (D.C. Cir. 1991) ........................................ 17

*Raines v. Byrd*,
521 U.S. 811 (1997) ........................................ 6

*Reeve Aleutian Airways, Inc. v. United States*,
982 F.2d 594 (D.C. Cir. 1993) ........................................ 20-21

*Renal Physicians Ass'n v. U.S. HHS*,
489 F.3d 1267 (D.C. Cir. 2007) ........................................ 13, 16

*Rosenstein v. Dallas*,
876 F.2d 392 (5th Cir. 1989) ........................................ 39

*Sadallah v. City of Utica*,
383 F.3d 34 (2d Cir. 2004) ........................................ 24

*Scenic Am., Inc. v. U.S. Dep't of Treasury*,
836 F.3d 42 (D.C. Cir. 2016) ........................................ 11

*Sciolino v. City of Newport News Va*,
480 F.3d 642 (4th Cir. 2007) .................................................................................. 39

*SEC v. Goble*,
682 F.3d 934 (11th Cir. 2012) .................................................................................. 42

*Shibeshi v. United States*,
920 F. Supp. 2d 105 (D.D.C. 2013) .................................................................................. 6

*Shirvinski v. U.S. Coast Guard*,
673 F.3d 308 (4th Cir. 2012) .................................................................................. 29

*Siegert v. Gilley*,
500 U.S. 226 (1991) .................................................................................. 20, 22

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) .................................................................................. 14

*Sloan v. Dep't of Hous. & Urban Dev.*,
231 F.3d 10 (D.C. Cir. 2000) .................................................................................. 32

*Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*,
655 F.2d 938 (9th Cir. 1981) .................................................................................. 15, 42

*Sparrow v. United Air Lines, Inc.*,
216 F.3d 1111 (D.C. Cir. 2000) .................................................................................. 6

*Spagnola v. Mathis*,
859 F.2d 223 (D.C. Cir. 1988) .................................................................................. 37

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) .................................................................................. 7

*St. Martin's Press, Inc. v. Carey*,
605 F.2d 41 (2d Cir. 1979) .................................................................................. 43

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .................................................................................. 16-17

*Stone v. Univ. of Md. Med. Sys. Corp.*,
855 F.2d 167 (4th Cir. 1988) .................................................................................. 30

*Swanson Grp. Mfg. L.L.C. v. Jewell*,
790 F.3d 235 (D.C. Cir. 2015) .................................................................................. 8, 9

*Trifax Corp. v. Dist. of Columbia*,
314 F.3d 641 (D.C. Cir. 2003) .................................................................................. 21

*Trudeau v. FTC*,
456 F.3d 178 (D.C. Cir. 2006) .................................................................................. 6

*United States v. Harrington*,
749 F.3d 825 (9th Cir. 2014) .................................................................................. 31

*U.S. Ecology, Inc. v. U.S. Dep't of Interior*,
231 F.3d 20 (D.C. Cir. 2000) .................................................................................. 15-16

*URI Student Senate v. Town of Narragansett*,
707 F. Supp. 2d 282, 298 (D.R.I. 2010) .................................................................... 29

*URI Student Senate v. Town of Narragansett*,
631 F.3d 1 (1st Cir. 2011) ........................................................................................... 29

*Vill. of Bensenville v. FAA*,
457 F.3d 52 (D.C. Cir. 2006) ...................................................................................... 26

*Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Com.*,
547 F.2d 938 (5th Cir. 1977) ....................................................................................... 22

*Williams v. Dep't of Veteran Affairs*,
879 F. Supp. 578 (E.D. Va. 1995) ...................................................................... 35-36, 38

*Worth v. Jackson*,
451 F.3d 854 (D.C. Cir. 2006) ..................................................................................... 10

**Constitutional Law**

U.S. Const. amend. V ......................................................................................................5

**Statutes**

5 U.S.C. § 552a.............................................................................................................. *passim*

8 U.S.C. § 1182(a)(3)(B) .............................................................................................3, 41

18 U.S.C. § 793 (2012) ................................................................................................... 42

Fed. R. Civ. P. 12(b) ..................................................................................................... 5, 6

Pub. L. No. 114-126 § 2(a)(1), 130 Stat 282 (2016) .............................................. *passim*

Pub. L. No. 93-579, 88 Stat. 1896 (1974) .................................................................... 34

**Administrative and Executive Materials**

31 C.F.R. § 501.807......................................................................................................... 14

31 C.F.R. § 1020.220(a) ................................................................................................. 27

**Other Authorities**

1 Emp. Discrim. Coord. Analysis of Federal Law § 18:43 (2017) ............................................ 39

4 McQuillin Mun. Corp. § 12:396 (3d ed.) (2017)........................................................... 39

63C Am. Jur. 2d *Public Officers and Employees: Name-clearing hearing* § 476 (2017) ........... 39

Candace Taylor, *Onetime Danny Thomas Estate in Beverly Hills Sells for $65 Million*, Wall
Street Journal, Feb. 10, 2017,
https://www.wsj.com/articles/onetime-danny-thomas-estate-in-beverly-hills-sells-for-65-
million-1486767099 ..................................................................................................... 23

Neal J. Leitereg, *Metropoulos scion lands his own trophy estate on the Westside*, Los Angeles Times (March 9, 2017), http://www.latimes.com/business/realestate/hot-property/la-fi-hp-top-sales-20170311-story.html ........................................................................................................................ 23

OFAC, Resource Center: Financial Sanctions, *OFAC Sanctions Programs and Information*, https://www.treasury.gov/resource-center/sanctions/Pages/default.aspx ........................ 14-15

## STATEMENT

British citizen Gilbert Ramez Chagoury brings this action to redress the effects of what he alleges were unlawful disclosures of personal information, by unknown agents at the defendant agencies, to a reporter for the *Los Angeles Times* ("*LA Times*").[1] On August 28, 2016, the *LA Times* published an article reporting that Mr. Chagoury had applied for and was denied a visa for entry into the United States. The article attributed the reason for the visa denial to "terrorism-related grounds, a broad category that can apply to anyone believed to have assisted a terrorist group in any way, including providing money." Amended Complaint, ECF No. 15 ("Am. Compl."), Ex. A ("*LA Times* Article") at 7. According to plaintiff, the *LA Times* falsely suggested that he facilitated "fundraising for Hezbollah," a designated terrorist organization. *Id.* at 6. Plaintiff surmises that agents from the defendant agencies wrongfully provided this false information to the author of the article. The disclosure and publication of this information, plaintiff claims, injured his reputation and ability to transfer money into the United States. As a result, plaintiff alleges that he encountered difficulties paying for the substantial expenses related to a property he owned in Beverly Hills, California, which he ultimately agreed to sell at a discount.

At bottom, plaintiff claims that the alleged wrongful disclosure of information by the agency defendants set off a chain of events that ultimately deprived plaintiff of his property and reputation without due process of law, in violation of the Fifth Amendment to the United States Constitution. He asks that this Court issue (1) a declaration that he does not appear on any list

---

[1] The named agency defendants are the Federal Bureau of Investigation ("FBI"), Department of Justice ("DOJ"), National Counter Terrorism Center ("NCTC"), Department of State, Central Intelligence Agency ("CIA"), Department of Homeland Security ("DHS"), and U.S. Customs and Border Protection ("CBP").

of known or suspected terrorists or terrorist organizations issued by any Federal government agency, and an order requiring the government to so state to "the banks and the public"; (2) an order providing plaintiff with a hearing "at which he may present evidence to clear his good name"; and (3) an injunction prohibiting the agency defendants from making "further unauthorized disclosure of information or misinformation regarding Plaintiff . . . ." Am. Compl. ¶¶ 99, 105-08.

This Court lacks jurisdiction over plaintiff's Amended Complaint because plaintiff cannot establish the requisite standing. As an initial matter, plaintiff fails to show that, as opposed to past injury, he faces an imminent injury that will recur in the future, as he must demonstrate to obtain declaratory and injunctive relief. Plaintiff also fails to establish causation, since the injuries he alleges occurred through the independent and intervening actions of third parties, specifically the *LA Times* through its published reports and the financial institution(s) that chose to cease a business relationship with plaintiff. Finally, plaintiff fails to establish that his alleged injuries, even if caused by the defendants, could be redressed through this action. Regardless of whether plaintiff prevails in obtaining his requested relief, the non-party actors responsible for plaintiff's alleged injury can (a) persist in its reporting, and (b) decide not to do business with the plaintiff. Accordingly, plaintiff fails each of the essential elements of standing.

But even assuming that plaintiff were able to establish standing, his complaint should still be dismissed for failure to state a claim. First, plaintiff fails to establish that he was deprived of a constitutionally protected interest. Reputational harm alone cannot give rise to a valid due process claim, and plaintiff cannot meet the elements of this Circuit's "reputation plus" or "stigma plus" doctrines. Second, even if plaintiff could establish a deprivation, he cannot

establish that the deprivation was at the hands of these defendants, rather than of third-party actors. Third, even if, *arguendo*, plaintiff could establish a deprivation by these defendants (which he cannot), he would not be entitled to pre-deprivation process, and post-deprivation remedies already exist to satisfy the due process's meaningful-opportunity requirement. Finally, the specific remedies that plaintiff seeks—*i.e.*, a name-clearing hearing with the opportunity to cross-examine witnesses—are unavailable as a matter of law.

Accordingly, the Amended Complaint should be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

**1. Factual Background**

Plaintiff, a British citizen who currently resides in France, is a prominent businessman who founded and leads the Chagoury Group, "an industrial conglomerate with assets exceeding $1 billion that employs thousands of people worldwide." Am. Compl. ¶ 20-21. Plaintiff previously travelled regularly to the United States "on ten year multiple-entry tourist visas." *Id.* ¶ 46. During his regular travel to the United States, plaintiff bought a property in Beverly Hills, California. *Id.* ¶ 32. On May 22, 2015, the Department of State revoked plaintiff's visa, which was issued in December 2006, and required him to reapply. *Id.* ¶ 47. In September 2015, the Department of State denied plaintiff's application for a new visa, citing the Immigration and Nationality Act ("INA") Section 212(a)(3)(b). *Id.* ¶ 48. Section 212(a)(3)(b) of the INA provides, among other things, that any person who is a member of a terrorist organization or "whom the consular officer or Attorney General has reasonable grounds to believe" has engaged, is engaged, or is likely to engage, in a terrorist activity is inadmissible for purposes of entry to the United States. 8 U.S.C. § 1182(a)(3)(B)(ii)(II). The statutory definition of "engag[ing] in terrorist activity" is quite broad, and includes things like providing material support to terrorist organizations. *See* 8 U.S.C. § 1182(a)(3)(B)(iv).

Plaintiff contends that the Department of State denied his visa because it believed that he "provided material support to terrorists" based on "misinformation provided to it by the FBI, DOJ, NCTC, CIA, DHS, or CBP." Am. Compl. ¶ 51. On August 28, 2016, Joe Tanfani, a reporter at the *LA Times*, wrote and published an article entitled, "He was a billionaire who donated to the Clinton Foundation. Last year, he was denied entry into the U.S." *Id.* ¶ 53. The article suggested that plaintiff was included in a "'database used to screen travelers for possible links to terrorism' based on allegations he was 'facilitating fundraising for Hezbollah . . . .'" *Id.* ¶ 55 (quoting *LA Times* Article). Plaintiff contends that this information reported in the article was "unlawfully disclosed . . . by agents of the [defendant agencies]" without his consent and without being afforded notice or an opportunity to be heard. *Id.* ¶¶ 56, 61.

Plaintiff alleges that the disclosure and publication of information concerning his visa denial injured his reputation. *Id.* ¶ 84. Also, he alleges that a bank notified his attorney who had maintained "client accounts in California on his behalf" that the bank "was closing the accounts." *Id.* ¶ 76. The bank's decision to close the accounts limited in turn "his ability to transfer money to banks in the United States" and, thus, plaintiff "found it increasingly difficult to pay for substantial maintenance, property taxes, and other continuing expenses related to the house in Beverly Hills." *Id.* ¶ 77; *see also id.* ¶ 86. Plaintiff entered into a contract to sell the house "for less than what he believes is its fair value." *Id.* ¶ 77; *see also id.* ¶ 86.

On September 15, 2016, plaintiff filed a Complaint alleging that the agency defendants violated: (1) the Privacy Act of 1974, 5 U.S.C. § 552a(b); (2) the Judicial Redress Act of 2015, Pub. L. No. 114-126 § 2(a)(1), 130 Stat 282 (2016) (codified at 5 U.S.C. § 552a note); and (3)

the Due Process Clause of the Fifth Amendment to the U.S. Constitution, U.S. Const. amend. V.[2] *See* Compl., ECF No. 1 (hereinafter "Orig. Compl.") at 13-20. On February 21, 2017, plaintiff filed an Amended Complaint that, among other things, no longer pursues the statutory claims against defendants. Rather, he pursues only his procedural due process claim. *See* Am. Compl. at 13-17. Alleging that he was provided neither notice nor an opportunity to be heard *prior* to the disclosure and publication of the information concerning his visa denial, plaintiff alleges that his due process rights were violated. For the reasons stated below, the Amended Complaint should be dismissed.

**2. <u>Legal Standard</u>**

The agency defendants move to dismiss this case for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

First, in deciding a motion brought under Rule 12(b)(1), a federal court is presumed to lack subject matter jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A claim of jurisdiction should be closely scrutinized because a court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). "When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) . . . ." *Arpaio v. Obama,* 797 F.3d 11, 21 (D.C. Cir. 2015) (citation omitted).

[2] The Due Process Clause states: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

Second, in evaluating a motion brought under Rule 12(b)(6), "the Court must 'treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Shibeshi v. United States*, 920 F. Supp. 2d 105, 106 (D.D.C. 2013) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). "The Court need not accept as true, however, 'a legal conclusion couched as a factual allegation,' nor an inference unsupported by the facts set forth in the Complaint." *Id.* at 107 (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (alterations in original).

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING TO BRING HIS CLAIM

A core element of Article III's case or controversy requirement is that a plaintiff must establish that he or she has standing to sue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."). "[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers." *Allen v. Wright*, 468 U.S. 737, 752 (1984). And, the "standing inquiry [is] especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

To satisfy "the irreducible constitutional minimum of standing," a plaintiff must satisfy three elements. *Lujan*, 504 U.S. at 560; *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913

(D.C. Cir. 2015). First, a plaintiff must show an injury in fact—"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). Second, a plaintiff must show "a causal connection between the injury" and the challenged action. *Id.* "Third, it must be likely, as opposed to merely speculative, that the [plaintiff's] injury will be redressed by a favorable decision." *Id.* at 561 (citation omitted). Finally, the plaintiff bears the burden of establishing these elements and must clearly allege facts demonstrating each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).

Plaintiff lacks standing because he relies on allegations of past injuries, which are insufficient to pursue declaratory and injunctive relief. Moreover, he has failed to allege sufficient facts giving rise to a non-speculative risk of ongoing harm or a threat of imminent future injury. In addition, plaintiff relies on independent, voluntary third-party actions that negate the required causal nexus between the alleged disclosure of information by the defendants and the purported injuries. Accordingly, he failed to establish that the alleged harm was fairly traceable to Defendants and that, if granted the relief requested, his injuries will likely be redressed.

### A. Plaintiff Fails To Establish Non-Speculative Injury That Is Likely To Recur In The Future.

When a plaintiff "seek[s] declaratory and injunctive relief, past injuries alone are insufficient to establish standing. Rather, [the plaintiff] must show he is suffering an ongoing injury or faces an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103-04 (1983) (stating that "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy"). To establish standing for injunctive and declaratory relief, the

future injury must be nearly certain to occur. The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l. USA*, 133 S. Ct. 1138, 1147 (2013) (emphasis in original & citation omitted); *see also Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (stating that request for injunctive relief "creates a 'significantly more rigorous burden to establish standing' than that on parties seeking redress for past injuries") (quoting *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011)). Plaintiff here fails to allege facts showing that he faces an immediate or ongoing threat of future injury resulting from the alleged disclosure of information related to his visa denial.

At the core of plaintiff's claim is the allegation that he suffered a "significant financial injury" and that the agency defendants deprived him of his right "to maintain, use, or enjoy property" in violation of the U.S. Constitution. Am. Compl. ¶ 86. To support this claim, he presents two specific allegations: (1) one bank notified plaintiff's attorney that it was closing the client accounts that the attorney maintained on plaintiff's behalf, *see id*. ¶ 76; and (2) plaintiff experienced financial "difficulties" with respect to the expenses associated with his Beverly Hills house and, thus, agreed to sell it "at what he believes to be a deep discount," *see id.* ¶ 86. These allegations face an insurmountable jurisdictional hurdle.

Both allegations, as well as the alleged injurious governmental conduct (*i.e.*, alleged disclosure of information to the reporter at the *LA Times*) occurred in the past, and allegations of past injury uncoupled from a "show[ing] that [plaintiffs] face an imminent threat of future injury" do not establish standing. *In re Navy Chaplaincy*, 697 F.3d 1171, 1175 (D.C. Cir. 2012) (citing *Lyons,* 461 U.S. at 105). In other words, even if plaintiff suffered a "significant financial injury" that "ultimately le[d] him to agree to sell the house," this allegation is insufficient for

Article III standing. Am. Compl. ¶ 86. There are simply no "specific factual allegations" establishing that an injury is "virtually certain" to occur in the future. *NB ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 83 (D.C. Cir. 2012). Plaintiff's failure to even attempt to meet the "significantly more rigorous burden" of showing an imminent future injury requires the dismissal of his complaint. *Swanson Grp.*, 790 F.3d at 240.

Plaintiff purports to allege an ongoing injury on the ground that his "ability to transfer money to banks in the United States" has been limited as a result of "banks . . .refus[ing] to conduct business with [him]." Am. Compl. ¶ 77, 85. But this vague and conclusory assertion is not entitled to any deference or presumption of truth, *see Iqbal*, 556 U.S. at 678, and in any event fails to establish standing. The allegation that *one* bank notified an attorney that it was closing plaintiff's accounts in California does not support the tenuous assertion that banks in California and all over the United States have refused, or are either unwilling or unable, to serve him. The closing of accounts by a single bank does not give rise to a non-speculative risk of ongoing or future imminent harm in this case. *See Lyons*, 461 U.S. at 105-06 (holding that plaintiff, who was placed in a chokehold by a police officer, did not meet the required showing that "*all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter" or "that the City ordered or authorized police officers to act in such manner") (emphasis in original). Assuming that other banks across the country also will refuse to provide plaintiff with financial resources is nothing more than "sheer speculation," which is insufficient to invoke federal jurisdiction. *Munsell v. Dep't of Agric.*, 509 F.3d 572, 584 (D.C. Cir. 2007).

In addition to the two specific allegations of financial injuries, plaintiff claims that his name and reputation were harmed as a result of the agency defendants' alleged disclosure of information. *See* Am. Compl. ¶ 84. But aside from the unsupported conclusory assertion that he

"is suffering and will continue to suffer irreparable injury," *id.* ¶ 100, plaintiff does not allege any facts that could support a finding that there is a non-speculative risk that the alleged reputational harm will continue.[3] Absent from the Amended Complaint are concrete or particularized allegations of how the risk of ongoing reputational harm would manifest itself.

Plaintiff appears to presume, without elaboration, that similar disclosures of information are likely to occur in the future and cause additional reputational harm. *See id.* ¶ 104 (alleging that "Defendants should be enjoined from further unauthorized disclosure or distribution of information or misinformation concerning Gilbert Chagoury."). But the D.C. Circuit has rejected future injury standing claims based on "speculation . . . unconnected to concrete policies." *In re Navy Chaplaincy*, 697 F.3d at 1176; *see also Worth v. Jackson*, 451 F.3d 854, 860 (D.C. Cir. 2006). Plaintiff pleads no such policies here, and fails to allege facts showing that he is likely to be the victim of another purported unlawful disclosure of information. Therefore, any assertion that the agency defendants will act similarly in the future, thereby causing an unspecified risk of ongoing or future harm, also amounts to "sheer speculation." *Munsell*, 509 F.3d at 584.

Having pled no facts demonstrating an imminent threat of impending injury, plaintiff cannot satisfy the injury in fact prong of standing.

[3] Even if this Court were to find that this allegation were sufficient to satisfy the injury in fact requirement, it is manifestly clear that reputational harm alone is insufficient to give rise to a constitutional claim. *See Paul v. Davis*, 424 U.S. 693 (1976). Because there are no specific allegations showing a risk of ongoing or imminent harm to his financial interests (or property) in conjunction with, or in addition to, the alleged reputational harm, there is no cognizable procedural due process claim. *See infra* at 18-24.

### B. Plaintiff's Alleged Injuries Are Not Fairly Traceable To Defendants.

Even assuming *arguendo* that plaintiff could establish injury-in-fact, plaintiff cannot demonstrate that such injury would be "fairly traceable" to Defendants. *Clapper*, 133 S. Ct. at 1148. It is well-established that "speculation" is not enough to establish standing, *Lyons*, 461 U.S. at 105, particularly when, as here, there are intervening decisions "made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 50 (D.C. Cir. 2016) (citation omitted). Although a plaintiff may have standing "in a case that turns on third-party conduct," the D.C. Circuit has required "*substantial* evidence of a causal relationship between the government [action] and the third-party conduct, leaving *little doubt* as to causation." *Arpaio*, 797 F.3d at 20 (quoting *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 941 (D.C. Cir. 2004), *abrogation on other grounds recognized by Perry Capital LLC v. Mnuchin*, 848 F.3d 1072, 1101 (D.C. Cir. 2017)) (emphasis added).

To establish a causal nexus between the alleged disclosure and the alleged injuries, the Amended Complaint relies on a long, speculative chain of actions and decisions, many of which cannot be attributed to the agency defendants: (1) unknown individuals from one or more of the named agency defendants allegedly disclosed information to a reporter from the *LA Times*; (2) the *LA Times* reporter wrote and published an article related to plaintiff's visa denial; (3) one bank closed plaintiff's accounts and refused to conduct business with him; and (4) plaintiff encountered difficulties paying for the substantial expenses related to his Beverly Hills house, which ultimately led him to sell it at a perceived discount. *See* Am. Compl. ¶¶ 52-78. From this causal chain, plaintiff cannot plausibly conclude that his alleged injuries are traceable to the government's actions as opposed to the independent, voluntary actions of third-party actors.

The *LA Times* article, for example, nowhere suggests that it received "leaked" documents. To the contrary, it relies in part on a cable obtained from the internet site WikiLeaks to suggest that plaintiff funded Lebanese politician Michel Aoun, whose party was part of a political coalition with Hezbollah. *See LA Times* Article at 5-6. With respect to the visa denial, the article cites "interviews and government documents." *Id.* at 7. The article does not suggest that the reporter had access to documents improperly disclosed by the government, nor that the reporter relied exclusively on government information. To the contrary, numerous non-government individuals and sources are quoted in the article, including plaintiff himself. *See generally id*. Thus, even as pled, the *LA Times* could have written the article based on sources other than the allegedly disclosed information, and financial institutions, in turn, could have decided to stop transacting business with plaintiff even apart from the alleged improper disclosures supposedly in the *LA Times* article, Am. Compl. ¶ 62.[4]

Plaintiff heavily relies on the backdrop of federal banking regulations to explain why the bank terminated its business relationship with him. *See id.* ¶ 74 ("[A]llegations in a news article of unconfirmed claims that an individual financially supported terrorism, occurring against the backdrop of United States banking regulations . . . , will lead banks to refuse to transact business with that individual, regardless of the veracity or source of that information."). At the same time, however, plaintiff alleges that banks have an independent responsibility to "Know-Your-Customer" and to establish procedures for determining whether a customer appears on any

[4] The Amended Complaint generally alleges that "banks" have stopped serving the plaintiff. *See e.g.*, Am. Compl. ¶ 75. But the Amended Complaint provides no details about these "banks," such as their names, despite this information being solely in the possession of plaintiff. The only paragraph that attempts any factual support alleges that, following publication of the *LA Times* article, a single bank notified plaintiff's attorney that it was closing plaintiff's accounts. *Id.* ¶ 76. There is no factual support for the notion that any other bank made a similar decision.

public government sanctions list. *Id.* ¶¶ 71-72. Plaintiff concedes that he was not listed on any publicly-maintained government sanctions list,[5] and that only one bank, for unspecified reasons, closed his accounts. Plaintiff's speculation upon speculation is not sufficient to establish traceability. *See Clapper*, 133 S. Ct. at 1148; *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016) (stating that "[t]he greater number of uncertain links in a causal chain, the less likely it is that the entire chain will hold true") (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996) (en banc)).[6]

### C. Plaintiff Cannot Establish That His Alleged Injuries Will Be Redressed Through This Lawsuit.

Plaintiff also lacks standing because he fails to establish the final element in the Article III analysis, a likelihood that the alleged downstream injuries will be redressed if he prevails on the merits of the instant lawsuit. Even assuming *arguendo* some degree of causation between the alleged disclosure of information and the alleged injuries, it is well established that "causation does not inevitably imply redressability." *Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1278 (D.C. Cir. 2007). The alleged injuries in this case are predicated on the actions of third parties, and where redressability "depends on the unfettered choices made by independent

---

[5] To the extent that plaintiff is asking the Court to order the agency defendants to reveal any information beyond what is already publicly available through public government sanction lists, such remedy is not constitutionally required. *See Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*, 686 F.3d 965, 980 (9th Cir. 2012) ("[T]he Constitution certainly does not require that the government take actions that would endanger national security").

[6] Plaintiff's allegation of possible future harm by the Islamic State ("ISIS") similarly fails. *See* Am. Compl. ¶ 66. Plaintiff claims that because "Hezbollah has enemies," and Hezbollah "is locked in a deadly Syrian conflict with [the] Islamic State," being "falsely cast as a supporter of Hezbollah is to have one's life and the lives of one's family put at risk." *Id.* Again, this allegation is speculative and insufficient to establish a risk of injury that is "virtually certain" to occur. *Peacock*, 682 F.3d at 83. In addition, this threatened injury depends on the actions of independent actors not before this Court. *Lujan*, 504 U.S. at 562.

actors not before the courts and whose . . . discretion the courts cannot presume either to control or to predict, . . . standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (citation omitted); *see also Nat'l Wrestling*, 366 F.3d at 938. In fact, "mere 'unadorned speculation' as to the existence of a relationship between the challenged government action and the third-party conduct 'will not suffice to invoke the federal judicial power.'" *Nat'l Wrestling*, 366 F.3d at 938 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976)). Accordingly, standing does not exist where a plaintiff speculates that a favorable decision "will alter the behavior of regulated third parties that are the direct cause of the plaintiff's injuries." *Id.*

Here, plaintiff seeks: (1) a declaration that he is not on the Specially Designated Nationals ("SDN") List, or any other list of known or suspected terrorists or terrorist organizations; (2) an order prohibiting "further" unauthorized disclosures of information; and (3) an evidentiary hearing to clear his name and rebut "the incorrect information the Government relied on in wrongly determining Plaintiff provided material support to terrorism." Am. Compl. ¶¶ 105-08. Even if plaintiff were entitled to these expansive remedies on a procedural due process theory (which he is not), the Amended Complaint provides no grounds for believing that a favorable decision will undo or redress the alleged harms.

First, the SDN List is already accessible to the public, and the Office of Foreign Assets Control ("OFAC") has provided tools for any inquiries as to the designation status of a certain individual or entity, as well as for the reconsideration or removal of a designation. *See* 31 C.F.R. § 501.807 (2011) ("Procedures governing delisting from the Specially Designated and Blocked Persons List."); *see also* OFAC, Resource Center: Financial Sanctions, *OFAC Sanctions Programs and Information*, https://www.treasury.gov/resource-

center/sanctions/Pages/default.aspx (last visited Mar. 30, 2017). Plaintiff was not and has never been on the SDN List. Therefore, a declaration of a publicly known fact as to which there cannot be a litigable controversy—whether or not someone appears on a publicly available government sanction list— cannot alter the status quo. *See Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981) (holding that the purpose of declaratory relief is to "bring[ ] to the present a litigable controversy, which otherwise might only [be] tried in the future").

Second, it is equally unclear how an order prohibiting *future* disclosures would require any bank to change a decision not to conduct business with plaintiff, let alone redress the fact that plaintiff has agreed to sell his house at an alleged discount. Even plaintiff's demand for a name-clearing hearing cannot ensure redressability given the unknowable future actions of the banks. Plaintiff merely assumes that the "Government's strict regulation of banks" compelled the banks to act in a certain manner. Am. Compl. ¶ 88. But it is undisputed that no bank was required to refrain from transacting business with plaintiff. And because plaintiff was not and has never been on the SDN List, these financial institutions never faced any adverse consequences from the Government as a result of conducting business with him. Financial institutions in the United States can withdraw from their relationships with plaintiff despite being under no legal requirement to do so, and thus plaintiff can only speculate that an order from this Court allowing him to clear his name would prompt them to re-establish a financial relationship. *See Nat'l Wrestling*, 366 F.3d at 938.

For these reasons, this Court should be reluctant to "endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 133 S. Ct. at 1150; *see also U.S. Ecology, Inc. v. U.S. Dep't of the Interior*, 231 F.3d 20, 21 (D.C. Cir. 2000) (finding no

redressability where the plaintiff's "alleged injury would not be redressable unless and until California accepted transfer of the disputed land and elected to proceed with the . . . project."). There is a wealth of publicly available information concerning plaintiff—such as his business ties, investments, and political contributions—that is unrelated to the alleged improper disclosure and could influence the decision of private independent actors not to conduct business with him. Consequently, the banks may still decide whether to transact business with plaintiff based on their own business reasons.

Precisely because no bank was compelled or required to end its business ties with plaintiff, "the undoing of the [alleged] governmental action will not undo the harm, because the new status quo is held in place by other forces." *Renal Physicians*, 489 F.3d at 1278; *Arpaio*, 797 F.3d at 21 (stating that courts "may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties)").[7]

In short, plaintiff fails to establish that it is "likely, as opposed to merely speculative," that a favorable order from this Court would redress the third-party, downstream injuries that motivated his lawsuit. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 187 (2000). Accordingly, plaintiff lacks standing to bring his claim for declaratory and injunctive relief and the Court lacks jurisdiction to review his claim.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR A DUE PROCESS VIOLATION.

Because plaintiff fails to meet threshold jurisdictional requirements, the Court should not reach the merits of his Amended Complaint. *See Steel Co. v. Citizens for a Better Env't*, 523

[7] The same reasoning applies to plaintiff's allegation concerning the threat of harm posed by enemies of Hezbollah. It is unclear how a favorable decision in this case would likely prevent any possible threats from independent actors not before this Court, particularly ISIS.

U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause") (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). But even if the Court were to reach the merits, it should find that the Amended Complaint fails to state a claim upon which relief can be granted.

"There are three basic elements to a procedural due process claim: there must be (1) a deprivation; (2) of life, liberty, or property; (3) without due process of law." *Lightfoot v. Dist. of Columbia*, 273 F.R.D. 314, 319 (D.D.C. 2011) (citing *Propert v. Dist. of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991). Further, the deprivation must be the result of action by the government. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("The Clause is phrased as a limitation on the State's power to act . . . ."); *Greenya v. George Wash. Univ.*, 512 F.2d 556, 559 (D.C. Cir. 1975) ("Although government has broad power to prohibit actions undertaken by private individuals, the Constitution *proprio vigore* only places limitation on actions undertaken by governmental entities.").

Plaintiff contends that the "Due Process Clause of the Fifth Amendment requires that [he] be given notice and an opportunity to be heard *prior* to the Government depriving him of the use, enjoyment and value of his property rights in the United States." Am. Compl. ¶ 92 (emphasis added). Plaintiff further asserts that because he did not receive such notice or opportunity before the "Government" deprived him of property "via its unlawful leak," it follows that the agency defendants violated his due process rights. *Id.* ¶ 93. Regardless of how plaintiff frames his due process claim, however, it fails as a matter of law.

As an initial matter, plaintiff was not deprived of a constitutionally protected interest. And, to the extent one assumes, *arguendo*, a deprivation, it cannot be attributed to the government defendants. Assuming even further both such a deprivation and government action, the Constitution does not in any event require the government to provide plaintiff with notice and an opportunity to be heard prior to the alleged unlawful disclosure. Congress has prescribed adequate, post-deprivation statutory remedies through the Privacy Act, 5 U.S.C. § 552a, and the Judicial Redress Act, 5 U.S.C. § 552a note, for the unlawful disclosure of protected personal information. Since the alleged conduct giving rise to plaintiff's due process claim is encompassed within those statutes' comprehensive remedial scheme, it follows that the constitutional claim must be dismissed. Finally, plaintiff is not entitled in any event to any of the requested remedies and, thus, fails to satisfy an important element of his procedural due process claim.

**A. Plaintiff Was Not Deprived Of A Constitutionally Protected Interest.**

Plaintiff argues that the disclosure of inaccurate information about him "injured his good name, reputation, honor, and integrity and has generated a cloud of suspicion that is not consistent with the decent and honorable person [that he] is." Am. Compl. ¶ 84. Specifically, he alleges that the "leak of information . . ., occurring against the backdrop of the United States Government's strict regulation of banks," injured his reputation, as well as his ability to conduct business in the United States and pay for the substantial expenses related to his Beverly Hills house. *Id.* ¶ 88. These allegations are on their face insufficient to establish the deprivation of a constitutionally protected interest.

The law is clear that reputational harm alone cannot give rise to a due process claim. *See Paul*, 424 U.S. at 693. Rather, to state a claim, plaintiff must establish one of two reputation-

based claims—"reputation plus" or "stigma plus"— recognized under the law of this Circuit. *See Jefferson v. Harris*, 170 F. Supp. 3d 194, 204-05 (D.D.C. 2016) (citing *Hutchinson v. CIA*, 393 F.3d 226, 231 (D.C. Cir. 2005)). It is apparent from the face of the Amended Complaint that plaintiff here cannot prevail under either theory. The "reputation plus" theory requires "the conjunction of official defamation and [an] adverse employment action." *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998). To plead a "reputation plus" claim, a plaintiff must establish three elements: "(1) an adverse employment action, such as involuntary loss of government employment, (2) a stigmatizing or defamatory act by the government closely connected with that adverse action, and (3) a 'hampering' of his subsequent employment prospects." *Jefferson*, 170 F. Supp. 3d at 205 (quoting *Doe v. DOJ*, 753 F.2d 1092, 1111-12 (D.C. Cir. 1985)). The conceptual basis for this type of claim rests "on the fact that official criticism will carry much more weight if the person criticized is at the same time demoted or fired." *O'Donnell*, 148 F.3d at 1140.

Under this theory of liability, the claim must be dismissed because plaintiff was never employed by the government and the alleged stigmatizing or defamatory act was not closely connected to an adverse employment action. *See Dep't of Energy v. Rogers*, 139 F. Supp. 3d 120, 159 (D.D.C. 2015) (dismissing a "reputation-plus claim" because plaintiff "was never employed by the government, and the [defamatory act] did not accompany [plaintiff's] termination of his employment with the Hospital"); *cf. Jefferson*, 170 F. Supp. 3d at 205.

The second reputation-based theory available under D.C. Circuit law is a "stigma plus" claim, which, unlike a "reputation plus" claim, "does not depend on official speech, but on a continuing stigma or disability arising from official action." *O'Donnell*, 148 F.3d at 1140. "In other words, where a 'reputation plus' theory requires some form of defamatory or stigmatizing

speech by the government, the latter depends only on governmental imposition of 'a continuing stigma or other disability arising from official action' that 'foreclosed the plaintiff's freedom to take advantage of other employment opportunities.'" *Jefferson*, 170 F. Supp. 3d at 205 (quoting *O'Donnell*, 148 F.3d at 1140). Since it is clear that a showing of reputational harm alone cannot establish a constitutional injury, *see Paul*, 424 U.S. 693; *Siegert v. Gilley*, 500 U.S. 226 (1991), the D.C. Circuit has required plaintiffs to show that the harm "occurred in conjunction with, or flowed from, some tangible change in status." *O'Donnell*, 148 F.3d at 1141; *see also Doe*, 753 F.2d at 1108-09 (holding that "the government must be the source of the defamatory allegations" *and* "the resulting 'stigma' must involve some tangible change of status vis-a-vis the government").

The D.C. Circuit has recognized two ways in which a plaintiff may show a tangible change in legal status to support a "stigma plus" claim: (1) the government's "action formally or automatically excludes [the plaintiff] from work on some category of future [government] contracts or from other government employment opportunities"—*e.g.*, making "a binding determination to disqualify" the plaintiff from employment; (2) the government's action has the "broad effect of largely precluding [the plaintiff] from pursuing [his] chosen career." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1527-28 (D.C. Cir. 1994) (emphasis omitted).

Plaintiff fails, for numerous reasons, to establish the essential elements of a "stigma plus" claim. First, to the extent he alleges a reputational harm resulting from the improper disclosure of personal information to the media, it did not "involve some tangible change of status vis-a-vis the government." *Doe*, 753 F.2d at 1108-09. While the D.C. Circuit has recognized that a due process claim may lie where a government action either *formally* precludes the plaintiff of a legal right (*i.e.*, "formal or automatic exclusion" theory) or *broadly* precludes the plaintiff of his

chosen profession (*i.e.*, “broad range preclusion” theory), this authority is largely limited to cases involving lost employment or contracting opportunities. *See, e.g.*, *Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003); *Kartseva*, 37 F.3d at 1528-29; *O’Donnell*, 148 F.3d at 1140-41; *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993); *Doe*, 753 F.2d at 1108-09; *Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983); *Old Dominion Dairy Prods., Inc. v. Sec’y of Def.*, 631 F.2d 953, 963 (D.C. Cir. 1980); *Peter B. v. CIA*, 174 F. Supp. 3d 308, 314 (D.D.C. 2016); *Jefferson*, 170 F. Supp. 3d at 205-06; *Rogers*, 139 F. Supp. 3d 120, 147; *Payne v. Dist. of Columbia*, 4 F. Supp. 3d 80, 84 (D.D.C. 2013); *Marin v. U.S. Dep’t of Def.*, No. CIV.A. 95-2175(PLF), 1997 WL 749404, at *2-3 (D.D.C. Nov. 25, 1997), *aff’d*, No. 99-5102, 1999 WL 1006404 (D.C. Cir. Oct. 8, 1999). Plaintiff, a non-resident, British citizen residing in France whose last visa application to the United States was denied, does not and cannot allege that the government has denied him employment or contracting opportunities in the United States. Therefore, he cannot avail himself of this line of cases.

Second, even setting aside the failure to allege a loss of employment, plaintiff still cannot prevail under either the “formal or automatic exclusion” or “broad range preclusion” theories of the “stigma plus” test, because he has failed to show that an alleged stigmatizing act by the government involved or triggered a change in legal status. The alleged leak to the press did not *formally or automatically* exclude plaintiff of any legal right. He cannot point to “a *binding* determination to disqualify” or exclude him from something to which he was entitled. *Kartseva*, 37 F.3d at 1528-29. Plaintiff was not placed on the SDN List or any other OFAC-maintained sanction list that would have *required* persons or entities in the United States to stop doing business with him. At worst, the alleged improper disclosure of information would have warned financial institutions of a potential risk in maintaining business ties with plaintiff; it would not

have taken, vested, or frozen any property belonging to him. *See Rogers*, 139 F. Supp. 3d at 162. Additionally, Plaintiff does not, and cannot, allege that even if the government disclosed allegedly incorrect information, it has broadly precluded him of a chosen trade or career. *See O'Donnell*, 148 F.3d at 1141-42 (requiring plaintiff to show that his "ability to pursue his chosen profession has been 'seriously affected, if not destroyed'") (quoting *Kartseva*, 37 F.3d at 1529).[8]

Third, plaintiff's allegation that his property was devalued does not satisfy the "stigma plus" standard for a constitutional deprivation. In the few instances in which the D.C. Circuit has applied the "stigma plus" test beyond the employment context, it has required "plaintiffs to show that alleged reputational harm *completely* destroys the value of their property." *General Electric Co. v. Jackson*, 610 F.3d 110, 121-22 (D.C. Cir. 2010) (emphasis in original); *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1121-22 (D.C. Cir. 1988); *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977). In *General Electric v. Jackson*, the D.C. Circuit held that a plaintiff's claim that a particular government action "harms the [plaintiff's] reputation, and the market, in turn, *devalues* its stock, brand, and credit rating," and thus constituted a due process violation, was "foreclosed" by Supreme Court precedent. 610 F.3d at 121 (citing *Paul*, 424 U.S. at 693) (emphasis added); *see also Siegert*, 500 U.S. at 234 (holding that "so long as . . . damage flows from injury caused by the defendant to a plaintiff's reputation," plaintiff cannot state a constitutional injury). The Circuit noted that the alleged stigmatizing act did not render plaintiff's property valueless; instead, it merely devalued it, a "consequence[ that] fall[s] far short of completely foreclosing employment (*Doe*),

[8] Even then, plaintiff would be hard pressed to show that, as an unadmitted, non-resident foreign citizen whose most recent U.S. visa application has been denied, he has a protectable property interest in having access to the United States financial system or maximizing the value of his Beverly Hills property.

or suspending a government contract (*Reeve Aleutian Airways* )." *General Electric*, 610 F.3d at 122.

Similarly, in *Industrial Safety Equipment Association v. Environmental Protection Agency*, the D.C. Circuit held that the agency's issuance of a report warning against the use of certain asbestos-protection respirators did not deprive the manufacturers of property. 837 F.2d at 1121-22. The Circuit noted that, even though the report would affect the demand for the respirators and make them less profitable, "[t]his indirect effect . . . [could] hardly be said to constitute a constitutional deprivation of property deserving fifth amendment protection" because it "in no way . . . rendered valueless" the manufacturers' "respirator certifications." *Id.* at 1122. Accordingly, the Circuit held that the plaintiff failed to assert a reputation-based due process violation.

In this case, plaintiff's alleged injuries are limited to his supposed inability to maintain, use, or enjoy property in the United States—specifically, having to sell his Beverly Hills house at what he believes was a deep discount after encountering difficulties paying the substantial expenses associated with it. Am. Compl. ¶ 77. At best, this claim is tantamount to those rejected in *General Electric* and *Industrial Safety*. Like the alleged damage in those cases, the alleged stigmatizing act here did not render plaintiff's property valueless. To the contrary, the property reportedly sold for $65 million.[9] And even accepting plaintiff's allegation that the sale price

[9] Under Federal Rule of Evidence 201, the Court can take judicial notice of news reports announcing that plaintiff's Beverly Hills property was sold for $65 million "in what is L.A. County's priciest home sale to date this year." Neal J. Leitereg, *Metropoulos scion lands his own trophy estate on the Westside*, Los Angeles Times (March 9, 2017), http://www.latimes.com/business/realestate/hot-property/la-fi-hp-top-sales-20170311-story.html (last visited Mar. 31, 2017); *see also* Candace Taylor, *Onetime Danny Thomas Estate in Beverly Hills Sells for $65 Million*, Wall Street Journal, Feb. 10, 2017, https://www.wsj.com/articles/onetime-danny-thomas-estate-in-beverly-hills-sells-for-65-million-1486767099 (last visited Mar. 31, 2017).

represented a "deep discount" on the value of the property, Am. Compl. ¶ 86, such "consequence[] fall[s] far short of completely foreclosing employment (*Doe* ), or suspending a government contract (*Reeve Aleutian Airways*)." *General Electric*, 610 F.3d at 122.

Injuries such as the diminishment of property value —"injuries resulting not from [the alleged disclosure], but from market *reactions* to it—are insufficient to merit Due Process Clause protection." *Id.* at 113-14 (emphasis added); *see* Am. Compl. at 11 (header entitled "Bank *Reaction* to the LA Times Article") (emphasis added). Similarly, an allegation that the government provided false information to market participants that affected plaintiff's ability to conduct business is insufficient to constitute a constitutional deprivation of property. *See Indus. Safety*, 837 F.2d at 1121-22; *see also Sadallah v. City of Utica*, 383 F.3d 34 (2d Cir. 2004) (holding that absent an additional "deprivation of a legal right or status," such as revocation of a lease, defamatory statements made about the physical conditions of someone's business are not sufficient to allege a "stigma-plus" claim because the resulting harms were not "in addition to" the alleged defamation but rather were "deleterious effects" of it).

At bottom, plaintiff was not deprived of a constitutionally protected interest. Rather, his allegations "constitute[] nothing more than a claim of common law defamation" against government officials, and "defamatory publications by a [government] official, however seriously they may harm someone, do not deprive that person of any liberty [or property] interests protected by the due process clause." *Margoles v. Tormey*, 643 F.2d 1292, 1299 (7th Cir. 1981) (quoting *Elbert v. Bd. of Ed. Sch. Dist. No. 305*, 630 F.2d 509, 512 (7th Cir. 1980)) (citing *Paul*, 424 U.S. at 712). Accordingly, plaintiff's reputation-based due process claim is

foreclosed by Supreme Court and D.C. Circuit precedent and should be dismissed for failure to state a claim.

### B. Any Constitutional Deprivation Was Not At The Hands Of The Government.

Plaintiff's due process claim can also be dismissed on the ground that the alleged constitutional deprivation was not the result of state action. *See Am. Mfrs. Mut. Ins.*, 526 U.S. at 50. That is, even if plaintiff were able to assert a reputation-based theory such as "stigma plus," such deprivation cannot be attributed to the agency defendants. As an initial matter, plaintiff does not contend that the alleged unlawful disclosure of information to the *LA Times* occurred with the authorization, or even the knowledge, of the defendant agencies. Rather, the Amended Complaint relies almost entirely on the voluntary actions of independent third parties. Specifically, plaintiff relies on the decisions and actions of the *LA Times* and market participants (*i.e.*, unnamed banks and financial institutions in the United States) to establish a causal nexus between the alleged disclosure of information and his supposed inability to conduct business and maintain, use, or enjoy his Beverly Hills property.

Whether the actions of regulated parties can be attributed to the government "depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Id.* at 52 (citation omitted). Plaintiff's assertion that the agency defendants caused his alleged injuries is implausible on its face. Even if it were true that someone within the defendant agencies was the source of the alleged defamatory or stigmatizing information, the Amended Complaint does not establish that the defendant agencies compelled or coerced the *LA Times* into publishing the information, or indeed had any input whatsoever into the article. Similarly, the Amended Complaint does not establish that defendant agencies compelled or coerced any bank to refuse to

conduct business with plaintiff. It is undisputed that plaintiff was never placed on the SDN List or any other OFAC sanctions list. In short, the allegedly leaked information did not require or compel the banks to take a particular action and the Amended Complaint does not show otherwise.

On several occasions, plaintiff alleges that "[t]he Government's failure to disavow the misinformation . . . leads observers, including the banks refusing to transact with Mr. Chagoury, to believe that the United States Government's information is accurate and that the Government's silence is tacit confirmation of the false information." Am. Compl. ¶ 95. But that allegation is insufficient to attribute the actions of the *LA Times* and the banks to the government. "'Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives.'" *Vill. of Bensenville v. FAA*, 457 F.3d 52, 64 (D.C. Cir. 2006) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)). Any silence by the government concerning the *LA Times* article cannot be construed as confirmation of its truthfulness, the propriety of the reporter's decision to publish the information, or the bank's decision to stop transacting business with plaintiff. Silence, in other words, can in no sense be construed as official government confirmation.[10]

Plaintiff similarly relies on the "United States Government's strict regulation of banks" to argue that the agency defendants deprived him of a protectable property interest. Am. Compl. ¶¶ 87-88. Plaintiff points out that rules enacted by the Department of Treasury (not a named

[10] Indeed, the law is clear that only officially acknowledged disclosures of information are properly attributable to the government, not improper leaks. *See Fitzgibbon v. CIA*, 911 F.2d 755, 765-66 (D.C. Cir. 1990) (recognizing "a critical difference between official and unofficial disclosures"); *Am. Civil Liberties Union v. Dep't of State*, 878 F. Supp. 2d 215, 224 (D.D.C. 2012) (holding that the third-party disclosure of alleged government cables was no substitute for an official acknowledgement).

defendant) "warn banks that they must 'include procedures for determining whether the customer appears on any list of known or suspected terrorists or terrorist organizations issued by any Federal government agency and designated as such by Treasury in consultation with the Federal functional regulators.'" Am. Compl. ¶ 72 (quoting 31 C.F.R. § 1020.220(a)(4) (2001)). But that is precisely the flaw in plaintiff's theory; plaintiff was not placed on the SDN List. Any bank, as well as the general public, could have compared the content of the *LA Times* story with public government lists.

Nor is there any plausibility to plaintiff's theory that the "United States Government demands banks vigilantly guard against allowing suspected financiers of terrorism from opening or maintaining accounts or transferring money into or out of their banks" and that the banks must do this "regardless of the truth of the matter." *Id.* ¶¶ 68, 71. Plaintiff cannot credibly maintain that each of the defendant agencies had "demanded" that financial institutions rely on false information or on unauthorized or unlawful leaks by government officials. To the contrary, the government requires banks to establish procedures to check authorized "government lists," such as the SDN List, as the official source of information. 31 C.F.R. § 1020.220(a)(4). It also requires banks to establish their own procedures to ensure that the identity of the customer is properly verified and permits consultation with other financial institutions to ensure transparency. 31 C.F.R. §§ 1020.220(a)(2)(ii), (a)(6). None of the promulgated rules requires, coerces, or even encourages banks into relying on unconfirmed or unsourced information published in a newspaper article. And even if it were true that "[t]he rules do not caution banks to avoid relying on unauthorized or unlawful leaks," Am. Compl. ¶ 72, mere silence or acquiescence is not the type of exercise of "coercive power" or "significant encouragement" necessary to treat a typical third-party actor as an arm of the United States. *Am. Mfrs. Mut. Ins.*,

526 U.S. at 52. Simply put, the requisite level of coercion to attribute an action to the government must rise far above the mere silence alleged here.

Finally, were there any remaining doubt, another court in this district has soundly rejected plaintiff's *sub silentio* theory of state action under substantially analogous facts. In *Department of Energy v. Rogers*, the court rejected a "stigma plus" claim on the basis that, among other things, the alleged harm could not be attributed to the governmental defendants. 139 F. Supp. 3d at 163-65. The plaintiffs, a physician and his corporation, sued the Secretary of the Department of Health and Human Services and the officials who administered the National Practitioner Data Bank ("NPDB"). The plaintiffs argued "that the . . . acceptance, maintenance, and disclosure" of a false Adverse Action Report that the physician's prior employer submitted to the NPDB violated the physician's due process rights, because it "caused all prospective employers in the United States to reject plaintiff physician's applications for employment and medical staff privileges." *Id.* at 131-32 (citation omitted). The district court recognized that the Health Care Quality Improvement Act and its implementing regulations required health care entities to rely on "the information contained in an Adverse Action Report [to] apprise themselves of a physician's prior disciplinary history while conducting a credentials review." *Id.* at 161.

Notwithstanding this requirement, the court found that the alleged harms—reputational harm plus rejection of applications for employer and medical staff privileges—were "the result of private hospitals responding to information contained in the National Practitioner Data Bank and not the result of government action that changed [plaintiff physician's] status." *Id.* at 163. The court added that, "[e]ven though hospitals are required to query the [NPDB], 42 U.S.C. § 11135(a), what they choose to do with that information is entirely a product of their own free

will." *Id.* Accordingly, the court held that the plaintiffs could not show that their asserted liberty interest was deprived by government action and, thus, dismissed the plaintiffs' due process claim. *Id.* at 163-65.

Just like the plaintiffs in *Rogers*, plaintiff's failure to point to "'state action is fatal to [his] constitutional claim.'" *Id.* at 165 (quoting *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 317 (4th Cir. 2012)). Even assuming plaintiff could demonstrate a tangible change of legal status (which he cannot), such change was caused by the bank's decision to close plaintiff's accounts. Like the hospitals in *Rogers*, even if it were true that banks are encouraged to rely on certain information available to the public, they are not required to reach a certain conclusion (*i.e.*, stop conducting business with an individual or entity) absent the formal designation of the person as a known or suspected terrorist. OFAC has not made such formal designation here and did not include plaintiff on its SDN list or any other sanctions list. Accordingly, the bank's reaction "to unfavorable publicity about [Mr. Chagoury] is not a change in legal status imposed by the government officials who generated the publicity." *Id.* at 163 (quoting *Mosrie*, 718 F.2d at 1162). What the banks "choose to do with [the disclosed] information" and to what degree they choose to rely on it "is entirely a product of their own free will." *Id.* Because the alleged harm in this case "is predicated on voluntary third-party behavior, it cannot serve as a 'plus' factor" to plaintiff's due process claim. *Id.* (quoting *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 11 (1st Cir. 2011); *see also URI Student Senate*, 707 F. Supp. 2d 282, 298 (D.R.I. 2010) ("Even if catalyzed by government action, harms at the hands of [third] parties cannot serve as 'plus' factors . . . .").

In sum, plaintiff's due process claim should be dismissed because he was not deprived of a protectable interest, and, even if he were, any deprivation was not at the hands of the agency

defendants. Since there was no "deprivation by state action, the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant." *Rogers*, 139 F. Supp. 3d at 165 (quoting *Stone v. Univ. of MD Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)).

**C. Plaintiff In Any Event Has Received All The Process He Is Due.**

Plaintiff alleges that his due process rights under the Fifth Amendment were violated because he "received neither notice nor opportunity to be heard *prior* to the Government, via its unlawful leak by unknown agents and by encouraging or requiring U.S. banks to rely on such leaks in deciding whom to do business with, denying him property rights in the United States." Am. Compl. ¶ 93 (emphasis added). As noted earlier, to remedy this alleged due process violation, plaintiff seeks: (1) a declaration that he does not appear on any list of known or suspected terrorists or terrorist organizations issued by any Federal government agency, and an order requiring the government to so state to "the banks and the public"; (2) a court order enjoining the agency defendants from "further" disclosing or distributing information concerning plaintiff; (3) a meaningful hearing to "challenge the Government's evidence and conclusion" and "clear his good name." *Id.* ¶¶ 99, 102-03. Plaintiff's assertion concerning the scope of his alleged due process rights and the adequacy of his requested remedies should be rejected as a matter of law. And even if plaintiff could otherwise overcome the many deficiencies in his Amended Complaint, plaintiff has received all the process to which he would be due.

"[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (citation omitted). Instead, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citation omitted). The fundamental requirement of due

process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Three factors generally are relevant to this analysis: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest," including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Gilbert*, 520 U.S. at 931-32 (quoting *Mathews*, 424 U.S. at 335). How to satisfy due process's meaningful-opportunity requirement is informed by context, and, accordingly, due process procedures may vary "'depending upon the importance of the interests involved . . . .'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)).

Due process does not require, in all cases, "the full panoply" of trial-type protections generally afforded criminal defendants. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1143 (9th Cir. 2001); *see also Gonzalez v. Freeman*, 334 F.2d 570, 580 n.21 (D.C. Cir. 1964). In particular, due process does not "require that [an] agency grant a formal hearing." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 717 (9th Cir. 2011). Due process, rather, "is flexible," *United States v. Harrington*, 749 F.3d 825, 828 (9th Cir. 2014) (quoting *Mathews*, 424 U.S. at 334), requiring only "notice and opportunity for hearing appropriate to the nature of the case," *Pinnacle Armor*, 648 F.3d at 717 (quoting *Cleveland Bd.*, 470 U.S. at 542).

Moreover, the due process analysis looks to fairness in the "generality of cases," beyond the particular application of the process to the individual at bar. *Mathews*, 424 U.S. at 344

("[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions."). Thus, were the Court to ever reach this prong of plaintiff's due process claim, the central question would be whether there is any process that adequately remedies and prevents unauthorized disclosures of information, *in the generality of cases*.

For at least three reasons, plaintiff has received all the process that is due, even assuming the deprivation of a protectable property interest at the hands of the government. First, plaintiff was not entitled to notice or an opportunity to be heard *prior* to the alleged disclosure of information, because plaintiff concedes that the "leak" was unauthorized and "unlawful." Am. Compl. ¶ 54. Second, there are adequate post-deprivation procedures available in cases involving similar, if not identical, allegations. The existence of these procedures—Congressionally-prescribed remedies—is sufficient to satisfy due process's meaningful-opportunity requirement. Third, as a matter of law, plaintiff is not entitled to an evidentiary name-clearing hearing, nor any of the other remedies he requests. Accordingly, there is no additional "process" to which plaintiff is entitled.

#### 1. Plaintiff was not entitled to pre-deprivation process and its absence fails to establish a due process violation.

Plaintiff contends that his due process rights were violated because the government did not provide pre-deprivation process, *i.e.*, notice and opportunity to be heard, prior to allegedly disclosing false information about him. But the Supreme Court has held that, "when deprivations of property are effected through random and unauthorized conduct of a [government] employee, predeprivation procedures are simply 'impracticable' since the [Government] cannot know when such deprivations will occur." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (citation omitted) (holding that "unauthorized intentional deprivation of

property" does not require pre-deprivation process when "impracticable"); *Sloan v. Dep't of Hous. & Urban Dev.*, 231 F.3d 10, 19 (D.C. Cir. 2000).

Undoubtedly, pre-deprivation process in this instance was impracticable given the nature of the alleged injurious act (*i.e.*, an unauthorized "leak") and the intervening, voluntary reactions by third parties (*i.e.*, publication of leaked information and the decision of one bank to terminate its relationship with plaintiff). The Amended Complaint does not allege otherwise. With respect to the alleged disclosure of information to the press, the Amended Complaint characterizes it as a "leak" that was both "unlawful" and "unauthorized" and made by "unknown agents" of the defendant agencies. Am. Compl. ¶¶ 54, 56, 65, 72, 88-90, 93, 97. At no point does it allege facts showing that Defendants authorized, or even knew of, the alleged disclosure. *See Hudson*, 468 U.S. at 533 (stating that "intentional acts are . . . difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signalling his intent"). There is simply no factual or legal support for the proposition that pre-deprivation process could be afforded in the case of an unauthorized disclosure of information.

**2. Post-deprivation remedies satisfy the meaningful-opportunity requirement and preclude plaintiff's constitutional claim.**

Not only is there no support for pre-deprivation process in the case of an unauthorized or illegal act, as plaintiff alleges occurred here, but an unauthorized deprivation of property—one that is not "caused by conduct pursuant to established state procedure"—does not violate the Due Process Clause so long as the government provides a meaningful or suitable *post-deprivation* remedy. *Hudson*, 468 U.S. at 532-33 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)). The Amended Complaint is silent as to the existence and adequacy of post-deprivation remedies for unauthorized disclosures of information. It is clear, however, that plaintiff is familiar with some of these remedies because he sought them in his Original Complaint.

In his Original Complaint, plaintiff alleged that the unauthorized disclosure of information to the *LA Times* concerning his visa denial violated the Privacy Act of 1974, 5 U.S.C. § 552a(b), and the Judicial Redress Act of 2015, Pub. L. No. 114-126 § 2(a)(1). *See* Orig. Compl. at 13-16.[11] The Privacy Act "protect[s] the privacy of individuals identified in information systems maintained by Federal agencies" by "regulat[ing] the collection, maintenance, use, and dissemination of information by such agencies." *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896, 1896 (1974)); *see also* 5 U.S.C. § 552a(b). As a means of redressing violations of its protections, the Privacy Act provides various civil remedies. Of relevance here, it provides for monetary damages, "limited to proven pecuniary or economic harm," resulting from an unauthorized disclosure of protected personal information. *FAA v. Cooper*, 132 S. Ct. 1441, 1453 (2012); *see* 5 U.S.C. § 552a(g)(1)(D). It also provides, among other things, for the amendment of records and access to records. See 5 U.S.C. § 552a(g)(1)(A)-(B).

Individuals aggrieved by the government's allegedly improper disclosure of personal information, including through "leaks" to the media, routinely seek relief under Section 552a(b) of the Privacy Act. *See, e.g.*, *Convertino v. DOJ*, 684 F.3d 93 (D.C. Cir. 2012) (alleging wrongful disclosure to the media of a disciplinary report about plaintiff); *Paige v. Drug Enforcement. Admin*., 665 F.3d 1355 (D.C. Cir. 2012) (alleging wrongful disclosure of videotape collected in connection with an internal investigation of plaintiff); *Mayfield v. United States*, 599 F.3d 964, 967-68 (9th Cir. 2010) (alleging wrongful disclosure to the media of false information

---

[11] The Privacy Act protections and remedies apply only to U.S. citizens and lawful permanent residents. *See* 5 U.S.C. §552a(a)(2). The Judicial Redress Act of 2015 extends certain Privacy Act causes of action to non-citizens and non-lawful permanent residents in limited situations and under specific circumstances. *See* Judicial Redress Act of 2015, Pub. L. No. 114-126 §§ 2(a), (h)(3).

connecting plaintiff to the Madrid subway terrorist attack); *Lee v. DOJ*, 413 F.3d 53, 55-57 (D.C. Cir. 2005) (alleging that the FBI wrongfully disclosed information to the media about plaintiff from an espionage investigation); *Hatfill v. Mukasey*, 539 F. Supp. 2d 96, 105 (D.D.C. 2007) (alleging wrongful disclosure of information to the media suggesting that plaintiff was connected to anthrax attacks).

The Judicial Redress Act provides procedures to extend Privacy Act rights to certain persons otherwise not covered by the statute. The remedies provided under the Judicial Redress Act are limited "in the same manner, to the same extent, and subject to the same limitations" as those available under the relevant provisions of the Privacy Act. Judicial Redress Act of 2015, Pub. L. No. 114-126 § 2(a). Under both statutes, the remedies are "exclusive." *Id.* § 2(b). Given that "Congress has crafted what it considers to be appropriate remedies for disclosure and record access violations" under the Privacy Act, and "[g]iven the extensiveness of this remedial scheme," courts should not go beyond the Congressionally-provided remedies to provide new relief under the Constitution. *Chung v. DOJ* ("*Chung I*"), No. Civ. 00-1912(THF), 2001 WL 34360430 at *10 (D.D.C. Sept. 20, 2001), *aff'd in relevant part*, *Chung II*, 333 F.3d 273, 274 (D.C. Cir. 2003) (quoting *Williams v. Dep't of Veteran Affairs*, 879 F. Supp. 578, 586-87 (E.D. Va. 1995)).

It is well established that the existence of adequate post-deprivation remedies (be they statutory, regulatory, or at common law) satisfy due process's meaningful-opportunity requirement and, thus, preclude relief on a due process theory. *See Gallucci v. Chao*, 374 F. Supp. 2d 121, 125-26 (D.D.C. 2005), *aff'd*, No. 05-5280, 2006 WL 3018055 (D.C. Cir. Mar. 2, 2006) (rejecting due process claim because statute's "meaningful post-deprivation remedies ensure that [plaintiff] receives due process"); *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31,

43 (D.D.C. 2007) (holding that due process claim was not cognizable because there were adequate post-deprivation remedies in the form of tort claims). Under this Circuit's precedent, the Privacy Act has been found to be an adequate post-deprivation remedy for unauthorized disclosures of personal information located in federal agency records. *See Chung II*, 333 F.3d at 274.[12]

Whenever a plaintiff's constitutional due process claim is predicated on conduct that is "encompassed within the Privacy Act's comprehensive remedial scheme," courts have held that such constitutional claims are not cognizable. *Griffin v. Ashcroft*, No. 02-5399, 2003 WL 22097940, at *2 (D.C. Cir. Sept. 3, 2003) (citing *Chung II*, 333 F.3d at 274); *see also Brooks v. DOJ*, 959 F. Supp. 2d 1, 2-3 n.3 (D.D.C. 2013); *Jeter v. Fed. Bureau of Prisons*, 841 F. Supp. 2d 214, 217 (D.D.C. 2012), *aff'd*, No. 12-5285, 2013 WL 1733552 (D.C. Cir. Mar. 22, 2013). The underlying rationale for this proposition is that Congress prescribed adequate remedies through the Privacy Act and the existence of such remedies satisfy the Constitution's meaningful-opportunity requirement. Recognition of a constitutional claim under these circumstances would be either repetitive of a Privacy Act (or Judicial Redress Act) claim, or an improper exercise of judicial power. *See e.g.*, *Chung I*, 2001 WL 34360430 at *10 (noting that because the Privacy Act provides meaningful remedies, "it would be improper to permit [the plaintiff] to augment his claims under the Privacy Act with additional remedies under the Constitution") (quoting *Williams*, 879 F. Supp. at 586-87); *Blazy v. Tenet*, 979 F. Supp. 10, 27 (D.D.C. 1997) ("Insofar as his constitutional claims are in fact reiterations of his claims that the [agencies] violated the

---

[12] Since the Judicial Redress Act does not expand upon the substantive remedies provided in the Privacy Act, *see* Judicial Redress Act of 2015, Pub. L. No. 114-126 § 2(a), the Circuit's analysis of the Privacy Act as an adequate post-deprivation remedy applies with equal force to the Judicial Redress Act.

Privacy Act, those claims therefore must fail.") (citing *Spagnola v. Mathis,* 859 F.2d 223, 228 (D.C. Cir. 1988)).

While plaintiff is no longer pursuing the statutory claims, the allegations of fact giving rise to his due process claim are based on conduct encompassed within the remedial scheme of such statutes—namely, the allegation that unknown agents of the Defendant agencies unlawfully disclosed to the media "misinformation concerning Gilbert Chagoury that is stored in government databases." Am. Compl. ¶ 55. The existence of a post-deprivation statutory remedy that has been found to be adequate based on similar, if not identical, conduct necessarily means that there was no due process violation in this instance. *See Hudson*, 468 U.S. at 532-33; *Mathews*, 424 U.S. at 344. As such, plaintiff's constitutional claim "is not cognizable." *Brooks*, 959 F. Supp. 2d at 2-3 n.3 (citing *Griffin*, 2003 WL 22097940, at *2).

Moreover, even if plaintiff could not prevail in a lawsuit brought pursuant to these Congressionally-prescribed remedies, his due process claim still fails. As discussed above, the analysis of whether due process is satisfied looks to fairness in the "generality of cases," beyond the particular application of the process to the individual at bar. *Mathews*, 424 U.S. at 344. In enacting the Privacy Act and the Judicial Redress Act, Congress balanced the competing interests concerning the inaccuracy and dissemination of records, and determined what coverage and remedies were appropriate. This Circuit has determined that the remedies afforded under these statutes are constitutionally adequate and, thus, warrant the dismissal of a constitutional due process claim. *See Griffin*, 2003 WL 22097940, at *2; *Chung II*, 333 F.3d at 274. The unavailability of a remedy in one particular case does not empower the courts to go beyond these Congressionally-prescribed remedies to provide an additional or substitute procedural mechanism. Simply put, "the fact that the remedies are not exhaustive neither mandates nor

invites the creation of an alternative avenue of relief under the Constitution." *Chung I*, 2001 WL 34360430 at *10 (quoting *Williams*, 879 F. Supp. at 586-87); *Brooks*, 959 F. Supp. 2d at 3 (holding that plaintiff was not entitled to Privacy Act remedy and dismissing due process claim because it was predicated on the alleged Privacy Act violation). In conclusion, whether plaintiff could prevail in a Privacy Act/Judicial Redress Act action is irrelevant to the constitutional analysis of whether the due process's meaningful-opportunity requirement was satisfied. Their general availability alone satisfies due process.

**3. Plaintiff is not entitled to a name-clearing hearing or any of his other requested remedies and, thus, fails to establish a critical element of his due process claim.**

Even if the aforementioned remedies were inadequate (which they are not), due process does not require the relief sought in the Amended Complaint. The Fifth Amendment requires due process, "not every procedural device that he may claim or desire." *Johnson v. United States*, 628 F.2d 187, 194 (D.C. Cir. 1980). Crucial to the *Mathews* due process inquiry is "the probable value, if any, of additional or substitute procedural safeguards . . . ." *Mathews*, 424 U.S. at 335. Plaintiff fails to show that due process requires the Federal Government to provide a name-clearing hearing, or any of the other requested remedies, in addition to, or in substitution for, those post-deprivation processes already identified. Therefore, he fails to establish an important element of the *Mathews* inquiry and of his procedural due process claim.

***a. Plaintiff is not entitled to a name-clearing hearing*.**

At the core of plaintiff's procedural claim is his request for a "meaningful" name-clearing hearing. Am. Compl. ¶ 99. Plaintiff asks for the opportunity to hear "the basis for the Government's . . . conclusion that he provided support for terrorism" and to challenge and refute the "Government's evidence and conclusion." *Id*. The Amended Complaint is devoid of details

as to what this name-clearing hearing would look like. Regardless, this sort of hearing—evidentiary or otherwise—is not available to plaintiff.[13]

A name-clearing hearing is a remedy available to public officers and employees who have faced or will face a false stigmatizing charge in conjunction with an adverse employment action. *See, e.g.*, 63C Am. Jur. 2d *Public Officers and Employees: Name-clearing hearing* § 476 (2017); 4 McQuillin Mun. Corp. § 12:396 (3d ed.) (2017); 1 Emp. Discrim. Coord. Analysis of Federal Law § 18:43 (2017). In fact, an employer's denial of a name-clearing hearing often gives rise to a reputation-based due process claim. *Buntin v. City of Boston*, 813 F.3d 401, 406-07 (1st Cir. 2015); *Sciolino v. City of Newport News, Va.*, 480 F.3d 642 (4th Cir. 2007). During these hearings, the employee is provided an opportunity to refute any stigmatizing charges in a public setting to show that the inflicted stigma was undeserved. Most courts, however, consider that "adversarial proceeding processes," such as cross-examination, are not constitutionally required in such hearings. *Gunasekera v. Irwin*, 678 F. Supp. 2d 653, 663-64 (S.D. Ohio 2010) (citing *Boston v. Webb*, 783 F.2d 1163, 1167 (4th Cir. 1986); *Chilingirian v. Boris*, 882 F.2d 200, 206 (6th Cir. 1989); *Endicott v. Huddleston*, 644 F.2d 1208, 1216 (7th Cir. 1980)). Generally, the sole purpose of these hearings "is not to challenge the decision to discharge or otherwise to discipline the employee, but rather to provide the employee with a public opportunity to clear his or her name." *Gunasekera*, 678 F. Supp. 2d at 662; *see also Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989) ("[T]he process due . . . is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee.").

---

[13] To the extent plaintiff wishes to reapply for a visa, he is free to demonstrate his eligibility as part of the visa application process.

There exists no support in the case law for a name-clearing hearing beyond the employment context, however. More specifically, there is no support for the proposition that this sort of hearing could ever be extended to a case such as this, where the plaintiff is attempting to clear his name of what he contends are false allegations regarding his possible connection to a designated terrorist organization.[14] Indeed, based solely on an alleged unauthorized "leak," plaintiff demands to know what kind of "evidence" the Federal Government has concerning his purported ties with terrorism. Am. Compl. ¶ 99. In so doing, he relies on inapposite analogies and demands a procedure designed for the employment context that would seriously compromise the Government's interests in protecting counterterrorism investigative and intelligence-gathering, and in preventing harm to national security. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010) ("[N]ational security and foreign policy concerns arise in connection with efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess.")

The balance of interests does not justify the extension of this procedure to an alleged unauthorized disclosure. As a non-resident, unadmitted foreign citizen, plaintiff has little claim to access the financial markets in the United States, let alone to conducting business in the United States in a profitable manner or in a way that maximizes the value of his property. The government's "strong interest" in protecting against the disclosure of sensitive, and perhaps

[14] Had the government included plaintiff on its SDN List, there would still be no right to the name-clearing hearing plaintiff seeks. It is well established that a person's ability to challenge his designation after the fact can be adequate for purposes of the Constitution's due process clause, even with respect to a U.S. person. *See, e.g.*, *Holy Land Found. For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (noting that "we do not require an agency to provide procedures which approximate a judicial trial, . . . therefore, HLF has no right to confront and cross-examine witnesses") (internal citation omitted).

classified, information "clearly affects the nature . . . of the due process which must be afforded" to plaintiff. *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 207 (D.C. Cir. 2001). In light of these competing interests, due process plainly does not require the requested name-clearing hearing.

To the extent that any name-clearing hearing would also seek information regarding the basis for the refusal of plaintiff's most recent visa application, that is not permitted. *See Kleindienst v. Mandel,* 408 U.S. 753, 770 (1972) (holding that so long as a visa denial is made "on the basis of a facially legitimate and bona fide reason, . . .courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional interests of citizens the visa denial might implicate); *see also Kerry v. Din,* 135 S. Ct. 2128, 2138 (2015) (plurality opinion) and *id.*, 135 S. Ct. at 2140 (Kennedy, J., concurring in the judgment) (stating that, to the extent that a U.S. citizen had a procedural due process right to an explanation for the denial of her husband's visa application, that right was satisfied by citation to the statutory basis of refusal, 8 U.S.C. § 1182(a)(3)(B)—INA's bar to admissibility of persons who engage in terrorist activities). By asking to be "informed of the basis for the Government's incorrect conclusion that he provided support for terrorism and an opportunity to challenge the Government's evidence and conclusion," Am. Compl. ¶ 99, plaintiff appears to be seeking information regarding his visa refusal to which he has no due process claim, under the guise of a due process claim for an alleged "leak." *See id.* ¶¶ 50-51 (rejecting and questioning the grounds for the consular officer's denial of his most recent visa application).

Where the Supreme Court has rejected the notion that a U.S. citizen is entitled to any more than the statutory basis for the denial of a visa application to his or her spouse, plaintiff's request for a name-clearing hearing is not constitutionally required and should be denied. *See*

*Kerry*, 135 S. Ct. at 2138; *Mandel,* 408 U.S. at 770. Otherwise, any alleged leak of sensitive or classified information, regardless of its truthfulness or accuracy, could trigger a name-clearing hearing for individuals wanting to assess what information the government may have or not have, and inquire into their potential status. Such a result is not mandated by the Constitution. *See Al Haramain*, 686 F.3d at 980.

***b. Plaintiff is not entitled to his other requested remedies.***

Plaintiff seeks a declaration that he does not appear on government sanctions lists. But with respect to the SDN List or any other public sanctions list, he does not explain how the declaration of a publicly known fact presents a litigable controversy. Indeed, by his own allegations, plaintiff concedes that he was free to transact business in the United States, having sold his Beverly Hills property for a substantial sum. *See Societe de Conditionnement*, 655 F.2d at 943.[15]

Similarly, a court order enjoining agency defendants from future unauthorized disclosures of information, such as a disfavored "follow-the-law" injunction, is inappropriate. *See, e.g., SEC v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011); *Gilday v. Dubois*, 124 F.3d 277, 287 (1st Cir. 1997) (describing such injunctions as illusory and inadequate in terms of providing fair notice). Aside from the fact that this remedy does nothing to redress the alleged deprivation and is based entirely on speculative future injuries, it is not a remedy that would minimize the risk of an erroneous deprivation. Unauthorized government leaks violate federal law and are subject to criminal prosecution. *See* 18 U.S.C. § 793; *see also* Am. Compl. ¶ 59 (indicating that there is a

---

[15] As noted above, *see supra* note 5, plaintiff cannot seek to learn about any alleged non-public information as a remedy in this case.

"'zero tolerance' policy against government leakers"). Even if government agencies investigate and prosecute unauthorized disclosures, the very nature of a "leak" presumes rogue behavior. This Court should not enjoin defendants "from doing what [they are] not attempting to do." *St. Martin's Press, Inc. v. Carey*, 605 F.2d 41, 45 n.4 (2d Cir. 1979).

## CONCLUSION

For the reasons set forth above, the Amended Complaint should be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

Dated: April 5, 2017.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

CHANNING D. PHILIPS
United States Attorney

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Elizabeth J. Shapiro*

*/s/ Cesar A. Lopez-Morales*
ELIZABETH J. SHAPIRO, DC Bar No. 418925
CESAR A. LOPEZ-MORALES, MA Bar No. 690545
Civil Division, Federal Programs Branch
United States Department of Justice
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Tel: (202) 514-5302
E-mail: elizabeth.shapiro@usdoj.gov

*Attorneys for Defendants*